[No. 11846.  Department Two.  July 27, 1914.]

THOMAS J. CUSHMAN, *Respondent*, v. MERRILL CUSHMAN,
*Appellant*.[1]

MARRIAGE—VALIDITY—ANNULMENT—INFANTS—AGE OF CONSENT—
STATUTES—CONSTRUCTION. The common law age of consent to marry,
of 14 years for males and 12 for females, is not changed by Rem.
& Bal. Code, § 7150, providing that marriage is a civil contract that
may be entered into by males of the age of 18, and § 7162, author-
izing the annulment of a marriage if either party was incapable of
consenting thereto for want of legal age, and § 7164, providing for
licenses to marry when under age upon the written consent of the
parents, if the female be over fifteen years of age; since the statute
permitting marriage was only cumulative of the common law and
nowhere prohibits the marriage of minors, or changes the common
law rule, and since the regulations as to the issuance of licenses
do not affect the marriage status, and the requirement of parental
consent recognizes that infants are capable of giving their own
consent, under common law rules (MOUNT, J., dissenting).

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered December 23, 1913, upon find-
ings in favor of the plaintiff, in an action to annul a marriage,
tried to the court. Reversed.

*Longfellow & Fitzpatrick*, for appellant.

*Revelle, Revelle & Revelle*, for respondent.

MORRIS, J.—The parties to this action were married July
3, 1913, the respondent being then eighteen, and appellant
seventeen, years of age. Both parties at the time of this mar-
riage were apparently of full age, respondent being a strong,
robust appearing young man, six feet tall, and weighing one
hundred and seventy pounds. The marriage was without the
knowledge or consent of the parents of either of the parties.
Respondent, at the time of the issuance of the license, pro-
duced a witness who made the required affidavit that both of
the parties were of full age. It was agreed that the marriage

[1]Reported in 142 Pac. 26.

should be kept a secret from the respective parents, and this agreement was kept until July 28, when respondent's parents were informed of the marriage, appellant's parents having learned of it a few days previous. The marriage was fully consummated, and as a result thereof the appellant became pregnant, but suffered a miscarriage before the case came on for trial below. On August 1, respondent commenced this action, seeking an annulment of the marriage upon the ground that he was under legal age at the time of the marriage and had not the written consent of his parents. The lower court made findings from which we quote:

"That said marriage is void for the reason that the plaintiff at the time of the issuance of the marriage license and on the date on which he and the plaintiff were united in marriage was not of legal age, he being then of the age of eighteen years, and for the further reason that said marriage license was issued and said marriage contract entered into between the plaintiff and defendant without the consent of plaintiff's parents or either of them."

Upon this finding, a decree of annulment was based. The soundness of this decree is to be determined from the proper construction given some of our statutes relating to marriage, particularly Rem. & Bal. Code, §§ 7150, 7162, and 7164 (P. C. 329 §§ 1, 3, 37). These statutes are as follows:

"§ 7150. Marriage is a civil contract which may be entered into by males of the age of twenty-one years, and females of the age of eighteen years, who are otherwise capable."

"§ 7162. When either party to a marriage shall be incapable of consenting thereto, for want of legal age or a sufficient understanding, or when the consent of either party shall be obtained by force or fraud, such marriage is voidable, but only at the suit of the party laboring under the disability, or upon whom the force or fraud is imposed."

"§ 7164. The county auditor, before a marriage license is issued, upon the payment of a license fee of two dollars, shall require each applicant therefor to make and file in his office upon blanks to be provided by the county for that pur-

pose, an affidavit showing that such applicant is not feeble-minded, an imbecile, epileptic, insane, a common drunkard, or afflicted with pulmonary tuberculosis in its advanced stages: Provided, that in addition, the affidavit of the male applicant for such marriage license shall show that such male is not afflicted with any contagious venereal disease. He shall also require an affidavit of some disinterested credible person showing that neither of said parties is an habitual criminal, and that the female is over the age of eighteen years and the male is over the age of twenty-one years: Provided, that if the consent in writing is obtained of the father, mother, or legal guardian of the person for whom the license is required, the license may be granted in cases where the female is under the age of eighteen years, or the male is under the age of twenty-one years: Provided, that no consent shall be given, nor license issued, unless such female be over the age of fifteen years. Such affidavit may be subscribed and sworn to before any person authorized to administer oaths. Anyone knowingly swearing falsely to any of the statements contained in the affidavits mentioned in this act shall be deemed guilty of perjury and punished as provided by the laws of the state of Washington."

To support the decree, it must be held that, within the meaning of § 7162, incapacity of consent for want of legal age means males under twenty-one and females under eighteen; and that, by § 7150, the common law age of consent has been raised to twenty-one years in males and eighteen in females. In our opinion, such is not the proper construction of these statutes. It is difficult to discover how § 7150 in any wise changed the rule of the common law, or made the law otherwise than it would have been had no such statute been enacted. To declare that marriage is a civil contract adds nothing new to the law as it existed prior to the enactment of this statute, nor is any new privilege extended in permitting males of twenty-one and females of eighteen to enter the marriage relation, since under our law, Rem. & Bal. Code, § 8743 (P. C. 69 § 1), males become of full age at twenty-one and females at eighteen for all contractual purposes, and require no permissive statute to render them competent to

enter the marriage state when they reach the age of twenty-one and eighteen respectively, and such had been the law in this territory for twelve years prior to the enactment of § 7150. This statute was originally §§ 1 and 5 of the act of 1854, p. 404, regulating marriage, and as then enacted read as follows:

"§ 1. That marriage is declared to be a civil contract."

"§ 5. Males under the age of twenty-one and females under the age of eighteen shall not be joined in marriage without the consent of parents or other persons under whose government such minor may be."

The act of 1854 was amended in 1866, p. 81, § 1 of that act being § 7150 as we now have it, while § 5 was left out of the amendatory act, which provided for the issuance of a marriage license in all cases and prohibited the issuance of such license if the female was under the age of sixteen and the male under the age of twenty-one, without the consent of parents or guardian. This last section contained this proviso:

"But if either of the parties being of an age capable of contracting marriage have no parents or guardian resident within this territory, and the female has resided within this territory for a period of three months next preceding such application, the license may issue if otherwise proper without the consent mentioned in this section;"

the difference between these two acts being that the act of 1854 prohibited the marriage of males under twenty-one and females under eighteen without the consent of parents or guardian, while the act of 1866 prohibited the issuance of a license to males under twenty-one or females under the age of sixteen without the consent of parents or guardian. The proviso of the latter act was a plain recognition that infants were capable of contracting marriage, and there being no limitation as to the age of such capacity, we must find such limitation in the common law rule of twelve and fourteen years. This section was amended in 1867 by raising the age

of the female to eighteen years and leaving out the proviso. This continued to be the law until the act of 1909, when these sections were again amended, appearing as they now read. Section 8743, fixing the age of majority of both males and females as it now exists, was enacted in 1854. So that, when in 1866 the legislature declared that males of twenty-one and females of eighteen years of age were eligible to matrimony, it made no new provision in the law of the then territory, for it had been the law since 1854 that males of twenty-one and females of eighteen were of age for all contractual purposes, including matrimony. None of these sections prohibits the marriage of minors; nor do they attempt to fix the age when minors shall become capable of marriage; nor do they in any way change the common-law rule of consent from fourteen in males and twelve in females. In this respect, our law is analogous to the Iowa statute, which provides that males of eighteen years and females of fourteen years may be joined in marriage, which statute was held to be merely cumulative and not to abrogate the common law rule fixing the age of marriage consent at fourteen for males and twelve for females. In so holding, it was said, in *Goodwin v. Thompson*, 2 G. Greene (Iowa) 329:

"Statutes will not be construed to have an effect beyond that which is to be gathered from the plain and direct import of the terms used in declaring them. Effect by implication, will not be given to them, so as to change a well established principle of the common law. The act regulating marriages within this state, merely declares what description of persons 'may be joined in marriage,' . . . There is no prohibition of the marriage of a minor, who may be under fourteen years of age, expressed. The statute is merely cumulative in its operation, and cannot have the effect of repealing the common law, so as to render the contract void. Such has been the decision of this court, as well as the courts of last resort in nearly all the states of the union, in declaring the effect of statutes similar to ours."

So in our statute, there is no prohibition against the marriage of males under the age of twenty-one, nor of females

under the age of eighteen. For it cannot be said that, because a statute permits persons of full age to contract marriage, persons of less than full age may not. There is neither a direct inhibition nor, as was said in the Iowa case, will such effect be given by implication so as to change the well established principle of common law. The right of marriage existed at common law in males of twenty-one and females of eighteen, and this statute, being merely cumulative or supplementary to the common law, does not displace that law any further than is clearly necessary. Black, Interpretation of Laws, p. 363.

Neither is respondent's contention aided by § 7162, as this section does not attempt to fix the age at which either males or females are capable of consenting; and since it does not, we must look to the common law to find at what age such capacity is fixed. Here, again, we find a distinction between the law of this state and that of others from which respondent cites authorities. Wisconsin has a statute, cited in *Eliot v. Eliot*, 77 Wis. 634, 46 N. W. 806, 10 L. R. A. 568, providing that, when either of the parties to a marriage shall be incapable of consenting thereto for want of age, the marriage shall be void. But in determining when such incapacity arises because of lack of age, this statute is aided by § 2329 of the Revised Statutes of Wisconsin, providing that:

"Every male person who shall have attained the full age of eighteen years and every female who shall have attained the full age of fifteen years shall be capable in law of contracting marriage, if otherwise competent."

Reading these two statutes together, we can appreciate why it should be held that the latter, since it related to minors and not to persons of full age, as does ours, changed the common law age of consent to eighteen in males and fifteen in females. To like effect is *People v. Slack*, 15 Mich. 193, where it was held that the statute fixing the age of legal consent at eighteen years for males and sixteen for females abrogated the common law rule. The Texas statute pro-

vides that males under sixteen and females under fourteen shall not marry, and the cases from that state accordingly hold that the common law rule no longer exists. New York has passed several statutes on this subject. One passed in 1827 prescribes fourteen years for females and seventeen for males as the age of legal consent. This was repealed in 1830 and was not reenacted until 1887, when the age of legal consent was fixed at eighteen years in males and sixteen in females. In the time intervening between the repeal and reenactment of this statute, there was no statute in that state prescribing the age of legal consent, and the common law rule of fourteen years for males and twelve for females prevailed. *Bennett v. Smith,* 21 Barb. 439; *Moot v. Moot,* 37 Hun 288; *Conte v. Conte,* 81 N. Y. Supp. 923.

The Alabama statute provides that, "A man under the age of seventeen and a woman under the age of fourteen are incapable of contracting marriage," and this was held to enlarge the age of consent from that fixed by the common law. *Beggs v. State,* 55 Ala. 108. Here the same reasoning would obtain as in the Wisconsin, Michigan, and Texas statutes.

Many other similar statutes might be cited under which it could be held that the common law age of consent has been raised to the ages fixed in such statute. But we cannot escape the conclusion that, since our statute makes no attempt to fix the age at which infants of either sex may marry within this state, reference must still be had to the common law to determine what that age is, and to find the age when, under § 7162, "either party to a marriage shall be incapable of consenting thereto, for want of legal age;" and that, since no statute declares the marriage of such a person to be void or voidable, the marriage of males of fourteen and females of over twelve is a valid contract that can be annulled only upon the same grounds as would annul the marriage of males over twenty-one and females over eighteen. *Fitzpatrick v. Fitzpatrick,* 6 Nev. 63; *Parton v. Hervey,* 1 Gray 119; *Hiram v. Pierce,* 45 Me. 367, 71 Am. Dec. 555.

Section 7164, providing that a license to marry shall not issue to males under twenty-one nor females under eighteen and over fifteen unless the written consent of the parents or legal guardian be first obtained, is only a regulation concerning the issuance of a license to marry in no wise affecting the marriage status. *In re Hollopeter*, 52 Wash. 41, 100 Pac. 159, 132 Am. St. 952, 21 L. R. A. (N. S.) 847. In that case the female was fourteen years of age at the time of the marriage, and the parents sought to invalidate the marriage because of fraud in obtaining the license, and that the female was incapable of consenting because of lack of age. The following extract from that case is important upon the question now before us:

"Imogene was within the common law age of consent, so that we cannot hold, as a matter of law, as did the lower court, that she was incapable of consenting to the marriage. But it is argued that the common law age of consent is overcome in this state by the enactment of the law fixing the age of eighteen as the age under which a female cannot consent to carnal sexual intercourse. The fact that the law permits the marriage of minors at all is enough to overcome the argument advanced in behalf of this proposition. To so hold would be to say, in effect, that the enactment of the statute covering and defining the crime of statutory rape was a repeal of the law permitting infants to marry, even though they had the consent of their parents. Such was manifestly not the intention of the statute, for it is sometimes important that those under the statutory age should marry, and under certain conditions such marriages are to be encouraged. Applied to a particular case, the rule that infants of the age of fifteen and twenty, as the parties now are in this case, may marry, may seem harsh. But it must be remembered that it is the same rule that would sustain the marriage of a man all but twenty-one and a woman who is not quite eighteen. Experience has taught us that the rule that marriage solemnized and consummated without the consent of a parent is valid, is not only salutary but wholesome and necessary, although there are now, and always will be, those who oppose the thought of marriage under legal age."

The case of *Arey v. Arey*, 22 Wash. 261, 60 Pac. 724, is cited by respondent as favoring his contention, but that case is not in point upon the question here presented. The only error there assigned was the refusal of the lower court to award suit money and attorney's fees, the appeal being taken from an order sustaining a demurrer to the complaint upon the ground that it did not state facts sufficient to authorize such awards. The court did not review the judgment of annulment, since no appeal was taken from the judgment and no one was complaining of the finding of the lower court upon the dissolution of the marriage.

It might be added that the fact that license is issued for the marriage of infants, upon the written consent of their parents, is a recognition of the fact that infants are capable of giving their own consent thereto; for assuredly the law would not give its sanction to a marriage between parties whom it did not regard as capable of giving their consent thereto, and the requirement of parental consent is not to be regarded as meaning that infants are incapable of assenting to their own marriage. Infants may consent to contract marriage even though such consent, like their other executory contracts, may not be enforced against them. Parental consent adds nothing to the age or consenting capacity of the infant. Requirement of such consent simply means that infants may not be licensed to marry upon their own consent alone, but that the consent of their parents must be added thereto; lack of such consent, however, not affecting the validity of a marriage, but only subjecting those who have neglected to acquire it to the penalties of the law.

We believe we have not erred in finding a distinction between our statute and those of states supporting the authorities relied upon by respondent. Grave public and collateral private interests are involved in matrimony. As is said in 1 Bishop on Marriage and Divorce, § 586:

"No special public harm is done when a minor promises marriage, then breaks his promise and pleads his nonage.

But it would be a public scandal, an enormous abscess on the body politic, and a private curse to permit minors to come together in actual matrimony, then leave each other because of their nonage, then pair off differently, and continue the process until they were twenty-one years old."

Notwithstanding the direful results of such a law, it would be our duty to uphold it when we found it plainly written. We do not so find it, and the judgment is reversed.

CROW, C. J., FULLERTON, and PARKER, JJ., concur.

MOUNT, J. (dissenting)—It seems clear to me that Rem. & Bal. Code, § 7150 (P. C. 329 § 1), fixes the ages at which persons are capable of contracting marriage. This section necessarily implies that persons under the ages therein mentioned are incapable of entering into a marriage contract. Section 7162 (P. C. 329 § 3) emphasizes this construction, for it says:

"When either party to a marriage shall be incapable of consenting thereto, for want of legal age . . . such marriage is voidable, but only at the suit of the party laboring under the disability . . ."

These sections clearly modify the common law rule and make it plain that a marriage entered into by persons under these ages may be avoided. The trial court, therefore, was right in entering the judgment which was entered, and in my opinion the same should be affirmed. I therefore dissent.