Albert A. Oppido, J.
This is a motion for an order to inspect the Grand Jury minutes upon which the instant indictment is founded and for an order dismissing the said indictment upon the following grounds:
*119 1. Section 1030 of the Penal Law is vague and indefinite and, therefore, is invalid;
2. The alleged acts did not occur “ in or while attending ” a public school or institution of learning;
3. The victims consented to the acts; and
4. The victims were accomplices as a matter of law and there was no corroboration of their testimony.
The indictment accuses the defendants of the crime of 1 ‘ hazing ”, in violation of section 1030 of the Penal Law of the State of New York, committed as follows: “ The defendants, Robert LENTI, ROBERT PELLEGRINO, GAETANO ALISEO and PRANK GANNON, each aiding and abetting the other and acting in concert, and accompanied by juveniles, in the County of Nassau, State of New York, on or about the 4th day of April, 1964, did wilfully and unlawfully engage in what is commonly called hazing, while attending an institution of learning in Union Free School District #11, Oceanside, County of Nassau, State of New York, to wit, the defendants, Robert lenti, Robert Pellegrino, gaetano aliseo and prank gannon, each aiding and abetting the other and acting in concert, and accompanied by juveniles, during an installation of pledges in an initiation known as “ Hell Night ”, for the purpose of inducting certain pledges into a fraternal organization, known as Omega Gamma Delta Fraternity, did wilfully, wrongfully and knowingly assault michael kalogris, DANIEL WILLIAM ALEXANDER, JOHN THOMAS BRENNAN, DAVID DENNIS and richard stewart by [sic] striking them about the body and face with clenched fists, open hands, forearms and feet.”
The indictment also accuses the defendants of the crime of assault in the third degree (five counts), in violation of section 244 of the Penal Law, committed as follows: “ The defendants, ROBERT LENTI, ROBERT PELLEGRINO, GAETANO ALISEO and PRANK gannon, each aiding and abetting the other and acting in concert, and accompanied by juveniles, in the County of Nassau, State of New York, on or about the 4th day of April, 1964, wilfully, wrongfully, unlawfully and knowingly, assaulted michael kalogris, about the body and face with their clenched fists and open hands.”
The successive counts of the indictment similarly charge the defendants with the commission of assault, in the third degree, upon Daniel William Alexander, John Thomas Brennan, David Dennis and Bichard Stewart.
The crux of the defendants’ position, on this motion to dismiss the indictment, is that section 1030 of the Penal Law (hazing), is unconstitutional. Specifically, it is said that the language *120 of the statute is vague and indefinite. Section 1030 of the Penal Law provides:
“It shall be unlawful for any person to engage in or aid or abet what is commonly called hazing, in or while attending any of the colleges, public schools or other institutions of learning of this state, and whoever participates in the same shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten dollars nor more than one hundred dollars, or imprisonment not less than thirty days nor more than one year, or both, at the discretion of the court.
‘ ‘ Whenever any tattooing or permanent disfigurement of the body, limbs or features of any person may result from such hazing, by the use of nitrate of silver or any like substance, it shall be held to be a crime of the degree of mayhem, and any person guilty of the same shall, upon conviction, be punished by imprisonment for not less than three nor more than fifteen years.”
The defendants herein urge that there is neither a definition of the word ‘1 hazing ’ ’, nor a sufficient standard established by the statute by which this court can properly ascertain what actions the Legislature intended to make criminal. A thorough search has not revealed any decision concerning hazing rendered by either a court of the State of New York, a court of any of our sister States or a court of England. Moreover, the attention of the court has not been directed to any reported case on the subject. Therefore, this court in order to determine the validity of section 1030 of the Penal Law will interpret the statute in light of the pertinent and recognized principles of statutory construction.
It is clearly established and conceded by all that a criminal statute must be sufficiently explicit so that all those who are subject to the penalties thereunder may know what acts it is their duty to avoid. (People v. Firth, 3 N Y 2d 472; People v. Diaz, 4 N Y 2d 469; People v. Vetri, 309 N. Y. 401; Ann. 49 ALR 2d 456; International Harvester Co. v. Kentucky, 234 U. S. 216; Nash v. United States, 229 U. S. 373.) Moreover, the words in penal statutes are to be accorded their commonly accepted meaning in order that the citizenry may be apprised of exactly what is forbidden. (People v. Glubo, 5 N Y 2d 461.)
‘ ‘ ‘ Hazing ’ is defined to be striking, laying hands upon, treating with violence, or offering to do bodily harm to a new cadet with intent to punish or injure him; or other treatment of a tyrannical, abusive, shameful, insulting or humiliating-nature.” (Kentucky Military Trust v. Bramblet, 158 Ky. 205, 207.) (Bouvier’s Law Dictionary, p. 497, col. 1 [1948].)
*121 Webster’s Third New International Dictionary (p. 1041, col. 3 [1961]) defines hazing in material part as: “the subjecting (as a freshman or fraternity pledge) to treatment intended to put in ridiculous or disconcerting position.”
The verb, " to haze ’ ’, is defined as follows: “ to intimidate by physical punishment.” (Id., col. 2.)
In People v. Diaz (supra, p. 470) a prosecution under a city ordinance purportedly prohibiting “loitering”, the Court of Appeals, on the question of vagueness and indefiniteness of the ordinance stated: “It is the rule that for validity a criminal statute must be informative on its face (People v. Firth, 3 N Y 2d 472) and so explicit that ‘ all men subject to their penalties may know what acts it is their duty to avoid ’ (United States v. Brewer, 139 U. S. 278, 288; People v. Vetri, 309 N. Y. 401). While the term ‘ loiter ’ or ‘ loitering ’ has by long usage acquired a common and accepted meaning (People v. Bell, 306 N. Y. 110), it does not follow that by itself, and tvithout more, such term is enough to inform a citisen of its criminal implications and, by the same token, leave it open to arbitrary enforcement.” (Italics added.)
It is pertinent that the ordinance in the Dias case did not adopt the commonly accepted meaning of " loiter ” or “ loitering ’ ’ within its language. In the instant case, section 1030 of the Penal Law does adopt the commonly accepted meaning of “ hazing ” within the language of the statute.
In contradistinction to the Diaz case is International Harvester Co. v. Kentucky (234 U. S. 216). There the court, by Justice Oliver Wendell Holmes, considering the criminal area of an antitrust statute, said (p. 223): “We regard this decision as consistent with Nash v. United States, 229 U. S. 373, 377, in which it was held that a criminal law is not unconstitutional merely because it throws upon men the risk of rightly estimating a matter of degree * * It goes no further than to recognize that, as with negligence, between the extremes of the obviously illegal and the plainly lawful there is a gradual approach, and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust.”
It is this court’s opinion that the language of Justice Holmes is applicable to the case at bar. “Hazing” is a word, which incorporates treatment such as the wearing of a “ beanie cap ’ ’ to the permanent disfigurement of the body. (See Penal Law, § 1030, 2d par.) (See, also, Grossman v. Baumgartner, 40 Misc 2d 221 [1963]; People v. Miller, 31 Misc 2d 1067 [1961].) It would have been an impossible task if the Legislature had *122 attempted to define hazing specifically. Fraternal organizations and associations have never suffered for ideas in contriving new forms of hazing. Apparently, the distinguished gentlemen of the New York State Bar, and the members of the Temporary State Commission on Revision of the Penal Law and Criminal Law, in the Proposed New York Penal Law felt that there was no need to amend or repeal the " hazing” statute. The proposed statute, section 250.10 provides: “ A person is guilty of harassment when, with intent to harass, annoy or alarm another person: * * * 11. As a student in a school, college, or other institution of learning, he engages in conduct commonly called basing.” (Italics for emphasis.) Therefore, the present statute which prohibits hazing, section 1030 of the Penal Law, goes no further than to recognize that as with other complex areas of life, between the polar extremities, the wearing of a " beanie cap ’’ and the permanent disfigurement of the human body, it is impossible to draw an arbitrary line in advance defining what is obviously legal and illegal. Such drawing of an artificial line would necessarily lead to unjust inequities.
Based upon the foregoing, this court holds that section 1030 of the Penal Law, as it applies to the instant case, is constitutional.
The defendants also urge that section 1030 of the Penal Law is not applicable to the facts since the alleged crime did not occur ££ in or while attending” a public school or institution of learning. Specifically, the defendants claim that since the alleged acts took place in a private home, and not in a school building or on school property, the statute does not apply to them,
It is conceded that while a penal statute must be interpreted according to the fair import of its terms, a court is not justified in giving an arbitrary or strained construction to its provisions unless it can be fairly interpreted that the alleged acts come within the purview of the statute. (People v. Benc, 288 N. Y. 318 [1942]; People v. Wood, 8 N Y 2d 48; Penal Law, § 21.)
To answer the defendants’ contention, it is necessary to construe the term " in or while attending ’ ’. Does this term mean that the acts of hazing must take place on school property?
The headnote to the original statute, as it was enacted in 1894 (L. 1894, ch. 265), states: " AN ACT to provide against the offense of hazing in the colleges and other institutions of learning in the state of New York”. It appears, therefore, that the objective of section 1030 of the Penal Law is to pro *123 Mbit the occurrences of hazing, which have been a part of fraternal and nonfraternal societies associated with institutions of learning and which rely on students to perpetuate their existence. Students, who attend public high schools in the State of Hew York, live at home. Moreover, many students who attend college either live in off-campus dwellings or in campus dormitories. Frequently, the houses of fraternities or fraternal-type associations are located off-campus. In Hew York City, it is not uncommon to find that fraternities rent apartments or houses for their social pledging and initiation functions. The court is not aware whether the above observations were true in 1894, the effective date of section 1030' of the Penal Law. However, laws must be interpreted in light of the conditions existing in today’s more modern and complex society. (Brown v. Board of Educ., 347 U. S. 483 [1954].)
However, it would be absurd to say that the Legislature intended to prohibit hazing which occurred on school property only and not to prohibit hazing if it took place off-campus in a private residence. Furthermore, upon a careful examination of all of the language of section 1030, it appears that the term, ‘1 in or while attending ’ ’, pertains to the status of defendants and not to the locus of the acts of hazing. Therefore, the court holds that acts of hazing, which occur in an off-campus residence or on other than school property, are proMbited by section 1030 of the Penal Law.
With respect to counts two through six (counts 2-6) of the indictment, which accuse the defendants of assault in the third degree, the defendants assert that the defense of consent is available to them.
The language of People v. Steinberg (190 Misc. 413, 416-417 [1947]), with respect to the defense of consent cannot be improved upon. There the Magistrates’ Court of the City of Hew York (Felony Court) said: “It is true that as a rule the consent of the prosecutor, if intelligently given, is a good defense in assault. We have examples in amicable contests, in assaults arising from voluntary sexual relations and in tumultuous frolics. There are, however, limitations to the rule, to quote Wharton’s Criminal Law (Vol. 1, 12th ed., § 835): ‘ On the other hand, if the fight has anything of character of illegality, or if the assault be of a nature injurious to the public as well as to the party assaulted, this reasoning does not apply. But in any view, consent obtained through fraud, by stupefaction or through the ignorance or incapacity of the party assaulted, is no defense.’ The consent must be voluntary and intelligent. *124 It must be free from force or fraud. Consent is the affirmative act of an unconstrained and undeceived will. The general principle seems to be also that the act performed should not exceed the extent of the terms of consent. * * * In People v. Gibson (232 N. Y. 458) where the defendant was convicted of assault in the third degree for indulging in indecent familiarities with a young girl with her consent, while the court tended to hold that the youth of the girl impaired her legal capacity to consent, and, therefore, there could be no consent, nevertheless, it avoided ruling directly on the question, but it did base its opinion, holding that there was an assault, upon the broader principle that even if the girl could consent as to her own person, she could not consent to allow the defendant to corrupt the public morals.” (See, also, Bartell v. State, 106 Wis. 342.)
Certainly in this instance, the boys who submitted to the physical pounding could not consent to the perpetration of those acts. It is true they were warned that there would be physical abuse. But did not the extent of the physical harm exceed the terms of any consent? Surely consent is not a carte blanche license to commit an unabridged assault. One boy spent several weeks in a hospital as a result of the beating he sustained. Can the consent of this boy be deemed to be intelligent, voluntary and undeceived? Under the circumstances of the case at bar, the defense of consent is not available to the defendants.
The defendants further contend that since section 1030 purports to prohibit “ any person to engage in or aid or abet what is commonly called hazing ’ ’, the victims of the acts were accomplices as a matter of law, and therefore, any testimony before the Grand Jury, standing alone without corroboration, is insufficient to support the indictment (Code Crim. Pro., § 399). The defendants also raise this same issue of corroboration with respect to the assault in the degree counts of the indictment. Moreover, the defendants urge that criminal intent, which is an element of the crime, was, from the facts presented to the Grand Jury, completely absent. This court, after reading the Grand Jury minutes, is satisfied that the evidence presented is sufficient to sustain the indictment herein.
The motion to inspect the Grand Jury minutes is denied. The motion to dismiss the indictment is also denied.