[No. 23337-1-II.    Division Two.    November 5, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. RICHARD V. HIOTT, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* of *Backlund & Mistry*, for appellant (appointed counsel for appeal).

*Edward Holm, Prosecuting Attorney*, and *Lisa Michele Kartes, Deputy*, for respondent.

ARMSTRONG, A.C.J. — Richard Hiott appeals his conviction in juvenile court of assault in the third degree. RCW 9A.36.031(1)(d), (f). The assault occurred during a game in which Hiott and his friend, Jose, were shooting at each other with BB guns. Jose was hit in the eye and lost his eye as a result. Hiott was charged with assault in the third degree; the trial court found him guilty, ruling that: "[a]t no time did either consent to be injured by the other, but both boys were engaged in a very reckless form of play . . . [and] this mutual play has lead [sic] to a crime."

The question is whether the victim's consent to the game is a defense to the assault charge. We hold it is not, and accordingly affirm.

ANALYSIS

A. Did the trial court apply the proper legal standard?

The trial court orally ruled that "[a]t no time did either consent to be injured by the other." Hiott contends that the court applied the wrong legal standard. He argues that the question is not whether Jose consented to the injury, but to the game activity. We need not address this, however, because we hold that consent is not available as a defense where the game is shooting at another with a BB gun.

B. Is consent a defense?

Consent can be a defense to a criminal assault

charge. *State v. Simmons*, 59 Wn.2d 381, 388, 368 P.2d 378 (1962) (the defense was applied in a sexual assault charge). Most recently, in *State v. Shelley*, 85 Wn. App. 24, 929 P.2d 489, *review denied*, 133 Wn.2d 1010 (1997), Division One held that consent can be a defense to an assault occurring during an athletic contest. During a game of "pickup" basketball, Shelley punched another player, breaking his jaw. Division One reviewed the use of consent as a defense and extended its use beyond that of sexual assault, adopting the approach of the MODEL PENAL CODE.[1] Under *Shelley*, consent can be a defense if "the conduct of defendant constituted foreseeable behavior in the play of the game" and the injury "occurred as a by-product of the game itself." *Shelley*, 85 Wn. App. at 31-32. In addition, consent is a defense only if the game is a lawful athletic contest, competitive sport, or other concerted activity not forbidden by law. *Id.* at 34. *Cf. State v. Dejarlais*, 136 Wn.2d 939, 969 P.2d 90 (1998) (consent not a defense to charge of violating a domestic violence protection order).

Hiott argues that Jose consented to the game, Hiott's conduct was foreseeable behavior in the game, and the injury resulted from the game itself. Further, according to Hiott, the game they were playing "is within the limits of games for which society permits consent." Hiott compares the boys' shooting of BB guns at each other to dodgeball, football, rugby, hockey, boxing, wrestling, "ultimate fighting," fencing, and "paint-ball." We disagree.

The games Hiott uses for comparison, although capable of producing injuries, have been generally accepted by society as lawful athletic contests, competitive sports, or concerted activities not forbidden by law. And these games carry with them generally accepted rules, at least some of which are intended to prevent or minimize injuries. In ad-

---

[1] The court in *Shelley* adopted the approach of the MODEL PENAL CODE, which provides that: "the conduct and the injury are reasonably foreseeable hazards of joint participation in a lawful athletic contest or competitive sport or other concerted activity not forbidden by law." *Shelley*, 85 Wn. App. at 31 (citing the MODEL PENAL CODE AND COMMENTARIES § 2.11 at 393 (Official Draft and Revised Comments 1985)).

dition, such games commonly prescribe the use of protective devices or clothing to prevent injuries. Shooting BB guns at each other is not a generally accepted game or athletic contest; the activity has no generally accepted rules; and the activity is not characterized by the common use of protective devices or clothing. *Cf. Ritchie-Gamester v. City of Berkley*, 461 Mich. 73, 597 N.W.2d 517 (1999) (ice skater at a city-owned ice arena sued for negligence after being injured by another skater; court addressed the standard of care in recreational activities and games, applying the "everyday reality" of participating in a recreational activity by adhering to the rules defining the sport).

Moreover, consent is not a valid defense if the activity consented to is against public policy. *Helton v. State*, 624 N.E.2d 499, 514 (Ind. Ct. App. 1993). Thus, a child cannot consent to hazing, a gang member cannot consent to an initiation beating, and an individual cannot consent to being shot with a pistol. *People v. Lenti*, 44 Misc. 2d 118, 253 N.Y.S.2d 9, 15 (1964); *Helton*, 624 N.E.2d at 515; *State v. Fransua*, 85 N.M. 173, 510 P.2d 106, 58 A.L.R.3D 656 (1973). In *Fransua*, the New Mexico court held that consent was not a defense to aggravated battery, recognizing that criminal statutes are enacted to protect citizens and to prevent breaches of the public peace. *Id.* at 107 (citation omitted).[2] Assaults in general are breaches of the public peace. *Shelley*, 85 Wn. App. at 29. And we consider shooting at another person with a BB gun a breach of the public peace and therefore, against public policy. We conclude that the trial court did not err in refusing to consider Jose's consent as a defense.

Affirmed.

SEINFELD and HUNT, JJ., concur.

---

[2]Washington also enacts criminal statutes for the purpose of preventing harm to public interests. RCW 9A.04.020(1)(d).