141 P.3d 92 (2006)
STATE of Washington, Respondent,
v.
Edwin Bruce BAXTER, Appellant.
No. 32766-0-II.
Court of Appeals of Washington, Division 2.
August 15, 2006.
*93 John A. Hays, Longview, WA, for Appellant.
Kimberley Robert Farr, Clark County Prosecuting Attorney's Office, Vancouver, WA, for Respondent.

PART-PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Edwin Bruce Baxter appeals his conviction for second degree assault of a child, which arose from his attempt to circumcise his eight-year-old son at home. He argues that the trial court erred by including his son's birth date in the elements instruction because the State had to prove as an element of the crime that his son was under the age of 13 at the time of the assault. He also contends that the trial court violated his due process right by excluding evidence of his religious motive and his son's consent to the procedure. Finally, he asserts that his trial counsel was ineffective for failing to raise a corpus delicti objection or to move for a change of venue. We find no reversible error and, therefore, affirm.

*94 FACTS
¶ 2 After pondering chapter 17 of Genesis for several weeks,[1] Edwin Baxter concluded that God was directing him to circumcise his eight-year-old son, E.N.B. Baxter explained to E.N.B. that, although he normally should not let people touch his private parts, this was different. Baxter, who had no medical training, then numbed E.N.B.'s penis with ice and attempted to remove the boy's foreskin with a hunting knife. Afterward, he attempted to control the bleeding with an animal wound cauterizing powder. When this failed, he called 911, acknowledging that his son was eight years old.
¶ 3 Responding to the scene, medical and law enforcement personnel found E.N.B. lying in a dirty bathtub bleeding from the penis. The child's mother was also present. An ambulance took E.N.B. to a hospital, where a physician closed the laceration with sutures. The physician concluded that there would likely be scarring, but no permanent impairment.
¶ 4 The State charged Baxter with second degree assault of a child. The case garnered some publicity in the county, and 28 of the 50 prospective jurors arrived at court with prior knowledge of the case from the media. The trial court excused any who expressed doubts about their ability to be impartial.
¶ 5 At trial, neither party was able to present its ideal case. The defense sought to present evidence that Baxter attempted the circumcision as an exercise of religious freedom and that E.N.B. had consented. The trial court excluded the evidence as irrelevant. And despite issuing material witness warrants, the State was unable to locate E.N.B. or his mother to call them as witnesses.
¶ 6 The court set forth the elements for second degree assault of a child in instruction 7. The first element was: "That on or about the 3rd day of September, 2004, the defendant committed the crime of assault in the second degree against E.N.B., [sic] (male, DOB: 8/10/96)." Clerk's Papers (CP) at 82. According to the second element, the jury would have to find that E.N.B. was under the age of 13 at the time the assault occurred. The jury convicted Baxter of second degree assault of a child.

ANALYSIS

I. The Jury Instructions
¶ 7 Baxter argues that the trial court violated article IV, section 16, of the Washington Constitution by including the victim's birth date in the "to convict" jury instruction when the victim's age was an essential element of the crime. He reasons that this was a structural error and thus not subject to harmless error analysis. Accordingly, he asks us to reverse and remand for a new trial.
¶ 8 "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. This prohibits judges "`from influencing the judgment of the jury on what the testimony proved or failed to prove." State v. Zimmerman, 130 Wash. App. 170, 174, 121 P.3d 1216 (2005) (quoting Bardwell v. Ziegler, 3 Wash. 34, 42, 28 P. 360 (1891)), review granted, 2006 Wash. LEXIS 514 (Wash. July 7, 2006). "It is thus error for a judge to instruct the jury that `matters of fact have been established as a matter of law." Zimmerman, 130 Wash.App. at 174, 121 P.3d 1216 (quoting State v. Becker, 132 Wash.2d 54, 64, 935 P.2d 1321 (1997)). Including a victim's birth date in jury instructions, where the victim's age is an element of the crime charged, is a manifest violation of this provision. State v. Jackman, 156 Wash.2d 736, 744, 132 P.3d 136 (2006); Zimmerman, 130 Wash.App. at 175, 121 P.3d 1216.
¶ 9 A judicial comment in a jury instruction is not a structural error or prejudicial per se. State v. Levy, 156 Wash.2d 709, 725, 132 P.3d 1076 (2006). Rather, it is presumed prejudicial, and the State bears the burden of showing the absence of prejudice, unless the "record affirmatively shows no prejudice could have resulted." Levy, 156 *95 Wash.2d at 725, 132 P.3d 1076. The State makes this showing when, without the erroneous comment, no one could realistically conclude that the element was not met. See Levy, 156 Wash.2d at 726-27, 132 P.3d 1076. On the other hand, the burden is not carried, and the error therefore prejudicial, where the jury conceivably could have determined the element was not met had the court not made the comment. See Jackman, 156 Wash.2d at 745, 132 P.3d 136.
¶ 10 In Levy, for example, the defendant was charged with first degree robbery and first degree burglary. Levy, 156 Wash.2d at 715, 132 P.3d 1076. The to convict instructions stated that the State must prove the defendant had "entered or remained unlawfully in a building, to-wit: the building of [the victim]"; had taken "personal property to-wit: jewelry, from the person or in the presence of another, to-wit: [names of victims]"; and had been "armed with a deadly weapon, to-wit: a .38 revolver or crowbar." Levy, 156 Wash.2d at 716, 132 P.3d 1076. The defendant claimed that these instructions contained improper judicial comments, relieving the State of its burden to prove that certain items satisfied particular elements, for example that a crowbar was a deadly weapon or that the victim's apartment was a building. Levy, 156 Wash.2d at 716-17, 132 P.3d 1076. The Supreme Court agreed that some of these references were improper judicial comments. Levy, 156 Wash.2d at 721-23, 132 P.3d 1076. But the court noted that, "[n]o one could realistically conclude that a revolver is not a deadly weapon, an apartment is not a building, a specifically named person is not someone other than the defendant, and jewelry is not personal property." Levy, 156 Wash.2d at 727, 132 P.3d 1076. Thus, the only potential prejudice was in the crowbar reference, where the comment could have led the jury to erroneously conclude that a crowbar was a deadly weapon. Levy, 156 Wash.2d at 726, 132 P.3d 1076.
¶ 11 In Jackman, however, the Supreme Court found prejudice on facts more analogous to the case at bar. The charges against the defendant included 11 counts of crimes requiring the State to prove the victims' minority. And each of the jury's "to convict" instructions identified the victims by their initials and dates of birth. Jackman, 156 Wash.2d at 740-41, 132 P.3d 136. The defendant appealed his convictions on constitutional grounds. Jackman, 156 Wash.2d at 741-42, 132 P.3d 136. The Supreme Court first concluded that the instructions were judicial comments on the evidence because they allowed the jury to infer that the victims' birth dates had been proven by the State. Jackman, 156 Wash.2d at 744, 132 P.3d 136. Then it found the error prejudicial. Even though all four victims had testified about their correct birth dates, the State had presented corroborating evidence for three of them, and the defendant had never contested the fact of their minority, the court concluded that it was "still conceivable that the jury could have determined that the boys were not minors at the time of the events, if the court had not specified the birth dates in the jury instructions." Jackman, 156 Wash.2d at 745, 132 P.3d 136.
¶ 12 We find two fundamental distinctions between the evidence here and the evidence in Jackman. First, the jury heard Baxter, the victim's biological father, state twice on the 911 recording that E.N.B. was eight years old. Jackman stressed that, although the defendant had not challenged the victims' minority, he had not admitted or stipulated to it either. Jackman, 156 Wash.2d at 745, 132 P.3d 136. Here, Baxter's comments on the tape constituted an admission.
¶ 13 Second, the victims in Jackman were age sixteen and seventeen, and the State was required to show they were under eighteen. Jackman, 156 Wash.2d at 739-41, 132 P.3d 136. E.N.B., in contrast, was only eight years old, and the age threshold was thirteen. See RCW 9A.36.130(1). Considering this age discrepancy, combined with Baxter's admission and the corroborating evidence, such as a paramedic's testimony that he had noted E.N.B.'s birth date as August 10, 1996, and two other witnesses' testimony that E.N.B. was approximately eight years old, it is not conceivable that a jury would have found this element unproven absent the inappropriate comment. Accordingly, the record *96 affirmatively shows that no prejudice could have resulted, and the error was harmless.

II. Corpus Delicti
¶ 14 Baxter faults his trial counsel for failing to object to the admission of Baxter's extrajudicial statements on the ground there was insufficient evidence of the corpus delicti. He argues that, absent his own statements, the evidence shows only that E.N.B. suffered a cut to the foreskin but fails to rule out explanations for this cut that are consistent with innocence, such as that the injury was caused by an accident or that it was self-inflicted. Because an objection on this ground would have left the State with insufficient evidence to prosecute the charges, Baxter argues, the failure to object was prejudicial and fell below the standard of reasonably prudent representation.
¶ 15 To demonstrate that counsel was ineffective, a defendant must show both that defense counsel's representation was deficient and that this deficiency prejudiced the defendant. State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995). Representation is deficient if it falls below an objective standard of reasonableness. McFarland, 127 Wash.2d at 334, 899 P.2d 1251. The defendant is prejudiced if there is a reasonable probability that but for the deficiency the trial result would have differed. McFarland, 127 Wash.2d at 335, 899 P.2d 1251. Here, Baxter must show that the trial court would have sustained a corpus delicti objection, causing his statements to be excluded.
¶ 16 Washington follows the traditional corpus delicti rule. State v. Aten, 130 Wash.2d 640, 656, 927 P.2d 210 (1996). To establish the corpus delicti, the State must show "a certain act or result forming the basis of the criminal charge and the existence of a criminal agency as the cause of such act or result." State v. Meyer, 37 Wash.2d 759, 763, 226 P.2d 204 (1951). The perpetrator's identity is not part of the corpus delicti. Meyer, 37 Wash.2d at 763, 226 P.2d 204. A defendant's confession is insufficient to establish the corpus delicti; but if there is independent evidence of the crime, the confession may "be considered in connection therewith and the corpus delicti established by a combination of the independent proof and the confession." Aten, 130 Wash.2d at 656, 927 P.2d 210. The corpus delicti rule protects defendants from unjust convictions based entirely on confessions of questionable reliability. Aten, 130 Wash.2d at 657, 927 P.2d 210. The independent evidence need not be sufficient to establish the corpus delicti beyond a reasonable doubt, or even by a preponderance of proof. Meyer, 37 Wash.2d at 763, 226 P.2d 204. The standard is a prima facie showing, meaning "there is `evidence of sufficient circumstances which would support a logical and reasonable inference' of the facts sought to be proved." Aten, 130 Wash.2d at 656, 927 P.2d 210 (quoting State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995)). Evidence that simply fails to rule out criminality does not reasonably or logically support an inference of criminality. Aten, 130 Wash.2d at 659, 927 P.2d 210. In evaluating the corpus delicti evidence, we accept the State's evidence and view all reasonable inferences in the light most favorable to the State. Aten, 130 Wash.2d at 658, 927 P.2d 210.
¶ 17 Baxter relies on Aten, where the court held that "the corpus delicti is not established when independent evidence supports reasonable and logical inferences of both criminal agency and noncriminal cause." Aten, 130 Wash.2d at 660, 927 P.2d 210. In that case, an infant was found dead in the morning, after being left in the defendant babysitter's care overnight. Aten, 130 Wash.2d at 644, 927 P.2d 210. There was evidence that the babysitter had awakened the infant upon her arrival the night before and then put her back down. Aten, 130 Wash.2d at 644, 927 P.2d 210. The autopsy concluded that the infant had died of Sudden Infant Death Syndrome (SIDS) or acute respiratory failure. Aten, 130 Wash.2d at 646, 927 P.2d 210. Although manual interference could have caused acute respiratory failure, it was impossible to diagnose this from the autopsy. Aten, 130 Wash.2d at 646, 927 P.2d 210. No inference of human action was raised until the defendant admitted to suffocating the infant. Aten, 130 Wash.2d at 647-50, 927 P.2d 210. The defendant was convicted *97 of second degree manslaughter. Aten, 130 Wash.2d at 643, 927 P.2d 210. Noting that, without these confessions, the only evidence of cause of death was an autopsy report that was as consistent with an innocent death as with a criminal one, we reversed the conviction for failure to establish the corpus delicti. State v. Aten, 79 Wash.App. 79, 91, 900 P.2d 579 (1995). The Supreme Court affirmed. Aten, 130 Wash.2d at 662, 927 P.2d 210.
¶ 18 Baxter finds his case analogous. He claims that, absent his statements, the evidence equally supports any one of three causes of E.N.B.'s injury: accident, self-infliction, or the actions of another person. He reasons, therefore, that counsel should have made a corpus delicti objection. We disagree.
¶ 19 Contrary to Baxter's assertion, the independent evidence was less consistent with accidental or self-inflicted causes than with a criminal agency. Aten "suggests that where there is more than one reasonable and logical inference as to the cause . . . if one inference is more consistent with the independent evidence than another, it might make the other inference less likely or reasonable." State v. Rooks, 130 Wash.App. 787, 804, 125 P.3d 192 (2005). Here, the independent evidence showed not simply a cut to E.N.B.'s foreskin, but a "fairly clean," circular incision completely around the foreskin. Report of Proceedings (RP) VII at 269-70. The notion that an accident caused the injury is not reasonable or logical. Nor is it reasonable or logical to infer that an eight-year-old child chose to perform this procedure on himself. The more logical and reasonable inference from the injury itself, which was consistent with ritual circumcision, is that another individual caused it.
¶ 20 Viewed in the light most favorable to the State, the most reasonable inference is that the child's injury was caused by a second degree assault. Thus, Baxter has not shown that the trial court would have sustained a corpus delicti objection. Accordingly, Baxter has not demonstrated that counsel was ineffective for failing to object.

III. Consent
¶ 21 Baxter argues that his right to a fair trial, as guaranteed by article 1, section 3 of the Washington Constitution and the Fourteenth Amendment of the U.S. Constitution, was violated when the trial court excluded evidence of his motive and the child's consent. The decision to proceed with the circumcision was a religious one, according to Baxter, to which his son consented. Because of this, Baxter contends that the trial court should have permitted him to argue consent.
¶ 22 In determining whether consent is a defense in a criminal case, the courts have considered the particular act, the surrounding circumstances, and society's interest in the activity involved. See, e.g., State v. Dejarlais, 136 Wash.2d 939, 943-44, 969 P.2d 90 (1998) (consent not a defense to violation of domestic violence protection order because the public has an interest in preventing domestic violence); State v. Hiott, 97 Wash. App. 825, 827-28, 987 P.2d 135 (1999) (consent not a defense to a game of shooting BB guns at each other because the game was not a generally accepted athletic contest and was against public policy); State v. Shelley, 85 Wash.App. 24, 33, 929 P.2d 489 (1997) (consent not a defense to punching another player during a basketball game where the contact was not foreseeable behavior in the play of the game).
¶ 23 In addition, courts have considered the individual minor's capacity to understand and appreciate the consequences of the consented-to conduct. See, e.g., Smith v. Seibly, 72 Wash.2d 16, 21, 431 P.2d 719 (1967). In Seibly, the court approved an instruction that, in deciding whether a married 18-year-old could consent to a vasectomy, the jury should consider his "age, intelligence, maturity, training and experience, marital status, control or the absence thereof by his parents, whether he was dependent or self-supporting and whether his general conduct was that of an adult or that of a child." Seibly, 72 Wash.2d at 19, 431 P.2d 719.
¶ 24 In determining, then, whether a child can legally consent to an assault, we consider the particular act, the surrounding circumstances, society's interest in the activity, and the particular child's capacity to understand *98 and appreciate the consequences of the act. Applying these factors to Baxter's attempted circumcision of his eight-year-old son, we hold that the trial court properly rejected Baxter's consent defense.
¶ 25 First, the great weight of authority disfavors the defense of consent in assault cases. See Shelley, 85 Wash.App. at 29, 929 P.2d 489. In Hiott, for example, the defendant and the victim were playing a game in which they shot BB guns at each other. Hiott, 97 Wash.App. at 826, 987 P.2d 135. The victim lost an eye, and the defendant was convicted in juvenile court of third degree assault. Hiott, 97 Wash.App. at 826, 987 P.2d 135. Noting that assaults in general are breaches of the public peace, and distinguishing this game from socially accepted athletic contests, we held that the defense of consent was not available. Hiott, 97 Wash.App. at 827-28, 987 P.2d 135. Similarly, "a child cannot consent to hazing, a gang member cannot consent to an initiation beating, and an individual cannot consent to being shot with a pistol." Hiott, 97 Wash.App. at 828, 987 P.2d 135 (citing People v. Lenti, 44 Misc.2d 118, 253 N.Y.S.2d 9, 15 (1964); Helton v. State, 624 N.E.2d at 515 (Ind.Ct. App.1993); State v. Fransua, 85 N.M. 173, 510 P.2d 106, 58 A.L.R.3d 656 (1973)).
¶ 26 Second, although Baxter analogizes the act here to ritual circumcisions that have been performed for thousands of years and have never been held contrary to public policy, there are obvious distinctions. In the Hebrew faith, for example, ritual circumcisions are performed by mohels who are trained medical professionals or have at least been trained in the craft through apprenticeship. See SARAH E. WALDECK, USING MALE CIRCUMCISION TO UNDERSTAND SOCIAL NORMS AS MULTIPLIERS, 72 U. Cin. L.Rev. 455, 520 (2003). Mohels must be qualified to perform the procedure and in some places are certified by hospitals. See Oliner v. Lenox Hill Hosp., 106 Misc.2d 107, 109, 431 N.Y.S.2d 271 (N.Y. Co.1980); Zlotowitz v. Jewish Hosp., 193 Misc. 124, 124-25, 84 N.Y.S.2d 61 (N.Y. Co.1948), aff'd, 277 A.D. 974, 100 N.Y.S.2d 226 (1950). The law holds the mohel to "the professional standards of skill and care prevailing among those who perform circumcisions." Zakhartchenko v. Weinberger, 159 Misc.2d 411, 413, 605 N.Y.S.2d 205 (Kings Co.1993). The mohel uses special equipment, including a "finely honed blade of surgical steel" and a "non-restricting guard." Ritual Circumcision, http://www.circumcision.net/Painless.htm (last visited July 26, 2006). And the ritual circumcision is performed at infancy, where the procedure is simpler.
¶ 27 By contrast, Baxter attempted to circumcise his eight-year-old son in a dirty bathtub, with no medical training, using a hunting knife and animal wound cauterizing powder as his tools. Even when performed by trained professionals, circumcision has been criticized by some for the pain it causes and its inherent risk of complications. See, e.g., WALDECK, 72 U.Cin. L.Rev. at 477-80. Given these risks, performing a circumcision as Baxter did here violates public policy.
¶ 28 Third, the law disfavors the notion that a child can consent to medical treatment. The age at which individuals are entitled to make their own medical decisions is 18 years. See RCW 26.28.015(5). The age of majority at common law was 21 years. See Cushman v. Cushman, 80 Wash. 615, 617-18, 142 P. 26 (1914). While the age of majority does not disqualify a minor from capacity to consent, State v. Koome, 84 Wash.2d 901, 911, 530 P.2d 260 (1975), Seibly, 72 Wash.2d at 21, 431 P.2d 719, a physician must "subjectively evaluate the capacity of a minor to give informed and meaningful consent to any type of medical care." Koome, 84 Wash.2d at 911-12, 530 P.2d 260 (citing Seibly, 72 Wash.2d at 17, 21, 431 P.2d 719). If the capacity of an eight-year-old to consent to treatment by medical professionals is questionable, then the court should be highly doubtful of his capacity to consent to a medical procedure performed by a layman in unsanitary conditions.
¶ 29 Finally, the record attributes to E.N.B. none of the indicia of capacity that would suggest an understanding and appreciation of the consequences of consenting to this procedure. That Baxter felt it necessary to explain to E.N.B. the difference between this procedure and an improper touching of his private areas suggests that E.N.B. lacked *99 the capacity to consent. The point is reinforced by comparing this incident to the facts of Seibly, where a married, employed 18-year-old, with children and a high school diploma, visited two physicians to discuss a vasectomy, went home to discuss the operation with his wife, and returned with a signed consent form, and still was able to raise a question whether he could consent. See Seibly, 72 Wash.2d at 16-17, 431 P.2d 719.
¶ 30 Moreover, there is a difference between consent and obedience. When a parent harms a child, and later says the child willingly agreed to the harmful activity, we view with skepticism the parent's claim that the child freely consented.
¶ 31 In conclusion, considering E.N.B.'s age and the circumstances surrounding the incident, the trial court did not err in precluding Baxter from asserting a consent defense.
¶ 32 In a related claim, not discussed in his brief but raised by Baxter's counsel at oral argument, Baxter contends he should have been permitted to explain to the jury that his actions were motivated by religious exercise and the control of his son's upbringing. The parents' right to control their children's upbringing is cardinal. Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). But the State, as parens patriae, may limit this right in the general interest of the youth's well-being. Prince, 321 U.S. at 166, 64 S.Ct. 438. The State may interfere with the parents' rights to raise their children only where it "seeks to prevent harm or a risk of harm to the child." In re Custody of Smith, 137 Wash.2d 1, 18, 969 P.2d 21 (1998); see also In re Guardianship of Hayes, 93 Wash.2d 228, 236-37, 608 P.2d 635 (1980) (parental consent insufficient to authorize sterilization of mentally retarded person). When parents defy the State's actions in protecting children, criminal liability may attach, even when the parents are acting in the interest of the child's religious upbringing. "Parents may be free to become martyrs themselves. But it does not follow they are free, in identical circumstances, to make martyrs of their children before they have reached the age of full and legal discretion when they can make that choice for themselves." Prince, 321 U.S. at 170, 64 S.Ct. 438. And criminal liability may be imposed when parents voluntarily cause physical harm to their children for religious purposes. See State v. Norman, 61 Wash. App. 16, 24, 808 P.2d 1159 (1991) (affirming first degree manslaughter conviction for failure to provide medical treatment to a sick child for religious reasons). Here, the harm Baxter inflicted on his son triggered the State's right to impose criminal liability, and the religious motive did not affect the criminality of the act.
¶ 33 Furthermore, the act was against public policy. State law prohibits cutting children as corporal punishment. See RCW 9A.16.100(1). Both corporal punishment and religious practice are grounded in the parents' beliefs as to the best interests of the child, and as parental control over the child's upbringing does not justify cutting the child as punishment, it does not justify cutting the child as a religious exercise. Cutting a child's genitalia is also disfavored in public policy. Congress and several states have passed legislation outlawing female circumcision, also known as female genital mutilation. See 18 U.S.C. § 116 (1996); Cal.Penal Code § 273.4 (2006); Del.Code Ann. tit. 11, § 780 (2006); 720 ILCS 5/12-34 (2006); Md.Code Ann., Health General § 20-601 (2006); Minn. Stat. § 609.2245 (2005); N.Y. Penal Law § 130.85 (2006); R.I. Gen. Laws § 11-5-2(c)(3) (2006); Tenn.Code Ann. § 39-13-110 (2005); Wis. Stat. Ann. § 146.35 (2006). Commentators have analogized this procedure to male circumcision. See WALDECK, 72 U. Cin. L.Rev. at 503-04; SHEA LITA BOND, COMMENT: STATE LAWS CRIMINALIZING FEMALE CIRCUMCISION: A VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT?, 32 J. Marshall L.Rev. 353, 380 (1999). While this point of view is certainly outside the mainstream of popular thought, the performance of a circumcision on an eight-year-old boy, by a layman using improper tools in an unsanitary environment, raises many of the dangers contemplated by Congress and other legislatures in their prohibitions of the female procedure. Thus, while Baxter had the right to control his *100 son's care and upbringing, that right did not extend to the type of harm he inflicted on his son, and his religious motive was not a valid defense to the corresponding criminal liability. Accordingly, the trial court did not err in excluding evidence of that motive.
¶ 34 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL, C.J., and PENOYAR, J.
NOTES
[1] The passage in question recounts God's order to Abraham that all males must be circumcised or their souls will be cut off from the people and their covenant with God broken.