James L. Dowsey, J.
The trial of this case has proceeded for approximately two weeks. The prosecution has presented its case and rested. The indictment accuses the defendants of the crime of “ hazing ”, in violation of section 1030 of the Penal Law of the State of New York, committed as follows: “ The defendants, Robert Lenti, Robert Pellegrino, Gaetano Aliseo and Frank Gannon, each aiding and abetting the other and acting in concert, and accompanied by juveniles, in the County of Nassau, State of New York, on or about the 4th day of April, 1964, did willfully and unlawfully engage in what is commonly called ‘ hazing ’, while attending an institution of learning in Union Free School District No. 11, Oceanside, County of Nassau, State of New York, to wit, the defendants, Robert Lenti, Robert Pellegrino, Gaetano Aliseo and Frank Gannon, each aiding and abetting the other and acting in concert, and accompanied by juveniles, during an installation of pledges in an initiation known as ‘ Hell Night ’, for the purpose of inducting certain pledges into a fraternal organization, known as Omega Gamma Delta Fraternity, did willfully, wrongfully and knowingly assault Michael Ualogris, Daniel William Alexander, John Thomas Brennan, David Dennis and Richard Stewart by [sic] striking them about the body and face with clenched fists, open hands, forearms and feet. ’ ’
The indictment also accuses the defendants of the crime of assault, in the third degree (five counts), in violation of section 244 of the Penal Law, committed as follows: “ The defendants, Robert Lenti, Robert Pellegrino, Gaetano Aliseo and Frank Gannon, each aiding and abetting the other and acting in concert, and accompanied by juveniles, in the County of Nassau, State of New York, on or about the 4th day of April, 1964, willfully, wrongfully, unlawfully and knowingly, assaulted Michael Kalogris, about the body and face with their clenched fists and open hands.”
Defense counsel have made the usual motions concerning failure of the prosecution to establish a prima facie case and guilt beyond a reasonable doubt; in addition certain motions concerning the validity of section 1030 of the Penal Law, which *684 reads in applicable part as follows, have been inade: “ It shall be unlawful for any person to engage in or aid or abet what is commonly called hazing * * * and whoever participates in the samé shall be deemed guilty of a misdemeanor
This court’s decision on these motions involve inextricable questions of law and fact. It is the responsibility of this court, at the conclusion of a case of this type, to charge the jury as to the law; however, the novel questions of fact presented clearly reveal the lack of guidelines in section 1030 of the Penal Law, which a normal criminal statute provides to the court for the purpose of instructing the jury on the elements of a specific crime. Section 1030 is not only vague, but also ambiguous. It refers to participants, which of necessity must include the pledges, the individuals for whom this statute was enacted to protect. Are pledges who participate equally guilty of hazing under the terms of this statute? Does this in law make them accomplices, therefore, requiring corroboration of their testimony? And what of their consent to participation in the hazing procedures? When does the hazing treatment administered exceed the consent given? If the consent is given intelligently, voluntarily and free of deceit or fraud, is this a complete bar and a defense to the acts prohibited by the section? Do the participants have a legal obligation to abandon the activities, or resort to acts of self-defense in order to dissolve the consent as a defense to make it no longer binding? It is strongly urged that the Penal Law involving hazing contain guidelines and criteria to resolve these queries.
The testimony elicited upon the People’s case was limited to “brothers” and “pledges” of the fraternity involved; they consented and participated in the hazing practices administered. Ordinarily, the paramount question of whether the pledges were accomplices and their testimony was sufficiently corroborated would be one of fact for the jury to determine. This court contends, however, as a matter of law, that due to the nature of the testimony and the ambiguity of the use of the term “participant” in the statute, that the pledges were participants, consequently accomplices and the required corroboration of their testimony was lacking. On this theory, not only the hazing count, but counts two to six, inclusive, involving assault, second degree, against these defendants are dismissed.
The District Attorney’s office has conducted itself in an admirable fashion in attempting to enforce the law as it is written; it is not the responsibility of the prosecution to interpret the statute; this function is relegated exclusively to the court.
*685 In a preliminary motion this court passed upon the validity of the statute in question (People v. Lenti, 44 Misc 2d 118); it is well-established practice that the prior decision established the law of the case, to be adhered to by Judges of co-ordinate jurisdiction. The rationale of the rule is to avoid protracted litigation, to promote harmony and to foster the exercise of comity and courtesy. (Matter of Hines, 88 F. 2d 423, 425; People ex rel. Mauceri v. Doherty, 192 N. Y. S. 2d 140; George W. Collins, Inc. v. Olster-McLain Ind., 22 A D 2d 485; Field v. Public Administrator, 10 A D 2d 97; Mutual Life Ins. Co. of N. Y. v. 160 East 72nd St. Corp., 272 App. Div. 48.)
In the context of the pattern of facts that has been presented by the People’s case, and after profound thought and meditation, reservations in the thinking of the court exist as to the validity and enforcibility of the hazing statute. This comment is in complete harmony with the prior ruling, and the chronological perspective completely consistent therewith, and made merely to focus legislative attention on the unenforcible aspects of the statute; and if as a consequence of extended elaboration by this court of the shortcomings of the existing statute, a new statute adequately recognizing the contemporary problems of hazing is promulgated, the end of justice will be considerably enhanced.
A new statute should be sufficiently informative on its face and so explicit that “ all men subject to its penalties may know what acts it is their duty to avoid.” (United States v. Brewer, 139 U. S. 278, 288; People v. Vetri, 309 N. Y. 401.) The term hazing no doubt has acquired a common and accepted meaning in society; it has a denotative and connotative definition; however, the term hazing is used in the statute in its generic sense, encompassing both innocuous acts and those which are physically and mentally a danger; used in this context the term hazing is not sufficiently informative to warn an individual in advance of the criminal implications involved; this inherent defect in a criminal statute leads to subjective interpretation and arbitrary enforcement.
The legislative intent of the statute remains shrouded in doubt even in the light of pertinent and recognized principles of statutory construction. (People v. Firth, 3 N Y 2d 472; People v. Diaz, 4 N Y 2d 469; People v. Vetri, 309 N. Y. 401.)
Consent of the pledges certainly should not be a bar to prosecution; intelligent consent cannot be a defense when the public conscience and morals are shocked (Bartell v. State, 106 Wis. 342); nor participation by pledges deem them accomplices.
The guidelines and criteria are lacking in the existing statute; it is recommended that a new statute incorporating responses *686 to these queries he drafted and recommended for legislative . approval; only then will an enforcible statute exist to prohibit the contemporary problems .that exist in hazing practices; only , then will the statutory standards and criteria be available to test the conduct of the prohibited acts; only then will the statutory machinery be available to properly punish violators.
The acts committed by the defendants and fellow members of. this fraternity are not being condoned by this court. In fact, this court will pontificate to the extent whereby it will reveal its. conscience is clearly shocked by the conduct these defendants, , and the members of this fraternity have exhibited; their conduct in the treatment of their contemporaries can only be characterized as sadistic, barbaric and immoral. The, dangers inherent in hazing procedures and practices cannot be eliminated unless , society, in close co-operation with school administrators, develop policies and attitudes that exhibit an awareness of the. wrong and conscientious desire to eliminate it. Initially, a community effort should'be set in motion" to compel the Legislature to pass a statute that is sufficiently clear in its term so that the acts prohibited are clearly defined and enforcible, and everyone is sufficiently advised in advance of the criminal activities to be condemned, 1 .
This entire problem of hazing must be looked at anew in terms' of present fraternity practices. What is commonly referred to as 11 Hell Night,” is well known and-feared by most, of the, parents and responsible school authorities of thi-s country. It is a practice and custom which a mature society should not allow its ,, young people to engage in. It has no educational value or signif- ; icance; on the contrary, it is conduct that is shameful, degrading,., and despicable. To assist in an intelligent attempt to aid, legislators, educators and parents to band together to promulgate legislation to properly restrict and restrain hazing activities, ; this court makes the following recommendations: •, ",
The present statute may be retained in its present form with-, out changes, which is as follows: Section 1030 of the Penal Law:-.] “ It shall be unlawful for any person to engage in or aid or abet ;" what is commonly called hazing, in or while attending any of the colleges, public schools or other institutions of learning, of this state, and whoever participates in the same shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten dollars nor more than one hundred dollars, or imprisonment not less than thirty days nor more than one year, or both at the discretion of the court. Whenever any tattooing or permanent disfigurement of the body, limbs or features of any person may result from such hazing, by the use of nitrate .of'.. *687 silver or any like substance, it shall be held to be a crime of the degree of mayhem, and any person guilty of the same shall, upon conviction, be punished by imprisonment for not less than three nor more than fifteen years.”
However, in order to make same more enforcible the following definitions should apply to the terms and conditions of said statute:
Engage — The word “ engage ” as used in this section should mean and include, (1) Any member of a fraternity who actually participates in planning the hazing procedures, as well as those who physically execute the practices.
Aid or abet — Aiding or abetting as used in this statute should not refer to the “ pledges ” or individuals upon whom the hazing practices are administered; they should not be deemed accomplices as a matter of law and their testimony should not require corroboration to establish a violation of the section, but the violation itself must be established by other independent evidence.
Mere membership in a fraternity should not constitute aiding and abetting in hazing practices, unless it is established that a member actively participated in the planning of the practices; and the plan as constituted was physically implemented; mere presence at a meeting, where the practice is executed should not be a violation of this section, unless an individual by a manifest act shows intent to participate.
Easing — Hazing should be defined as any act or series of acts which cause, or is likely to cause bodily danger or physical harm; or to mistreat by playing stunts or practice abusive or ridiculous tricks, that subject an individual to personal indignity or ridicule.
The duly elected officers of a fraternity should be directed by law to incorporate a copy of this statute into the by-laws of the fraternity, and to read to prospective pledges a copy of this statute before each and every duly constituted pledge meeting. Failure to do so should constitute a violation of this section by the officer of the fraternity officially conducting the meeting.
It should be immaterial where the meeting or practices occur, in or while attending an educational institution or physically off the school premises.
These recommendations are being made with a proper perspective of the fine and sensitive balance that exists between the function of the judiciary and that of the legislative.
Unless and until the Legislature so acts, courts will be seriously handicapped in an attempt to enforce penal statutes that contain the vagueness and indefiniteness of section 1030.
*688 In conclusion, it is therefore ordered that this court dismiss not only the first count of this indictment against all the defendants, but the remaining counts of the indictment, two to six inclusively.