[910 NYS2d 553]

In the Matter of KHALIL H., Appellant.

Second Department, November 9, 2010

APPEARANCES OF COUNSEL

*Catherine A. Sheridan*, Carle Place, for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Kristin M. Helmers* and *Deborah A. Brenner* of counsel), for respondent.

**OPINION OF THE COURT**

CHAMBERS, J.

## Introduction

Hazing, although encompassing different forms of conduct, is commonly understood to involve an initiation process which humiliates, degrades, abuses, or physically endangers persons who desire membership in an organization (*see* Webster's Third International Dictionary 1041 [1986]; *see also People v Lenti*, 44 Misc 2d 118, 121-122 [1964]). Elements of hazing can be traced back to the Middle Ages at European universities and was possibly rooted in ancient Greek civilization (*see* Kuzmich, Comment, *In Vino Mortuus: Fraternal Hazing and Alcohol-Related Deaths*, 31 McGeorge L Rev 1087, 1088-1089 [2000], citing Symposium, The Works of Plato [Irwin Edman ed. & Benjamin Jowett trans., The Modern Library 1956]). Today, hazing occurs in varying settings ranging from college fraternities to the military (*see* 10 USC § 6964; *Maines v Cronomer Val. Fire Dept.*, 50 NY2d 535 [1980]; *Vaughn v Pool Offshore Co., a Div. of Pool Co. of Tex.*, 683 F2d 922, 923-924 [1982]). Hazing activities can range from relatively innocent and innocuous conduct to abusive and lethal conduct. As noted in the often-cited case, *People v Lenti* (44 Misc 2d at 122), organizations and affiliations which engage in hazing "have never suffered for ideas in contriving new forms of hazing."

In this case, we primarily address whether a high school gang is an "organization" within the meaning of New York's hazing statutes (Penal Law §§ 120.16, 120.17) and whether a complainant can consent to being hazed.

## The History of New York's Hazing Legislation

On February 20, 1894, the freshman class of Cornell University gathered for its annual banquet (*see People ex rel. Taylor v Forbes*, 143 NY 219, 224 [1894]). While the banquet was in progress, students from the sophomore class released chlorine gas into the banquet hall, resulting in injuries to some of the freshmen and the death of a cook (*id.* at 224).

Just a week after this incident, State Senator Henry J. Coggeshall proposed legislation to criminalize hazing committed by college students as a misdemeanor-level offense (*see The Greater New-York Bill; Passed by the Senate as it Came from the House*, New York Times, Feb. 28, 1894). In 1894, the law was enacted, making New York the first state in the Union to criminalize

hazing (*see McKenzie v State*, 131 Md App 124, 130 n 3, 748 A2d 67, 70 n 3 [2000]). The statute made it "unlawful for any person or persons to engage in or aid or abet what is commonly called hazing, in or while attending any of the colleges, public schools or other institutions of learning in this state," and provided for a fine of up to $100 and/or a period of imprisonment of one year (L 1894, ch 265, codified as former Penal Law § 1030 by L 1909, ch 88).

Seventy years later, in April 1964, not unlike the scenario in this case, four students struck five pledges "about the body and face with clenched fists, open hands, forearms and feet" as part of an initiation ritual into a fraternity during "Hell Night" (*People v Lenti*, 46 Misc 2d 682, 683 [1965]). The four students were charged with hazing under former Penal Law § 1030, as well as assault in the third degree (*see People v Lenti*, 46 Misc 2d at 683). Although the court found the evidence presented to the grand jury to be legally sufficient (*see People v Lenti*, 44 Misc 2d 118 [1964]), following the defendants' motions for a trial order of dismissal at the close of the People's case, the court granted the motions and dismissed the indictment (*see People v Lenti*, 46 Misc 2d at 683-684, 688). Finding the statute to be "vague" and "ambiguous," the court raised concerns similar to those raised in the instant case as to whether the pledges should be considered accomplices as a matter of law or whether they consented to the hazing (*id.* at 684). The court urged the Legislature to write a more "enforc[ea]ble statute," suggesting that those who are hazed should "not be deemed accomplices as a matter of law," nor should their consent be a defense to prosecution (*id.* at 686-687).

In 1983, members of the Legislature responded by proposing legislation to address the concerns raised in *Lenti*, as well as other deficiencies in the statutory scheme that impeded prosecution of hazing crimes (hereinafter the 1983 bill). The drafters of the 1983 bill proposed amending Criminal Procedure Law § 60.22 to abolish consent as a defense to hazing crimes and the corroboration requirement so that hazing victims would not be considered accomplices (*see* Mem of Assemblyman Harenberg in Support of L 1983, ch 716, 1983 NY Legis Ann, at 311-312). In addition, the proposed bill expanded the reach of the Penal Law to cover all persons engaging in hazing activities, not just students in institutions of learning (*id.* at 312). However, while the Legislature adopted the Penal Law provision that expanded the law to cover "any organization" involved in hazing activi-

ties, it did not approve the proposed amendments to the Criminal Procedure Law (L 1983, ch 716, adding Penal Law § 120.16).

In 1988, the Legislature amended the hazing statute by splitting it into two degrees (hereinafter the 1988 bill) (*see* Penal Law §§ 120.16, 120.17).* The 1988 bill, like the 1983 bill, reintroduced amendments to the Criminal Procedure Law that would have eliminated consent as a defense and the corroboration requirement (*see* Sponsor's Mem [Skelos], Bill Jacket, L 1988, ch 86, at 10; 1987 NY Senate Bill S419-A). However, those amendments were not approved.

Since the enactment of the 1988 bill, the Penal Law provides two degrees of hazing. Hazing in the first degree, a class A misdemeanor, is defined as follows:

> "[a] person is guilty of hazing in the first degree when, in the course of another person's initiation into or affiliation with any organization, he intentionally or recklessly engages in conduct which creates a substantial risk of physical injury to such other person or a third person and thereby causes such injury" (Penal Law § 120.16).

Hazing in the second degree, a violation, is defined identically, except that it does not require the accused to cause physical injury: a person commits hazing in the second degree "when, in the course of another person's initiation or affiliation with any organization, he intentionally or recklessly engages in conduct which creates a substantial risk of physical injury to such other person or a third person" (Penal Law § 120.17). Recently proposed legislation would make those crimes, respectively, D and E felonies (*see* 2009 NY Senate Bill S298).

## Factual Background

Through the testimony of the complainant and an assistant principal from the appellant's high school, the presentment agency adduced the following evidence at the fact-finding hearing.

At the beginning of the school year, the appellant, Khalil H., began recruiting the complainant for the "Lost Boys" gang, a group of teenage boys who banded together to provide each other with protection. The appellant told the complainant that

---

* The passed bill also repealed Penal Law § 240.25 (4), which then provided that a person was "guilty of harassment when, with intent to harass, annoy or alarm another person, as a student in school, college or other institution of learning, he engages in conduct commonly called hazing."

in order to become a member of the gang, he was required to participate in a "jumping in," where other gang members would repeatedly strike him. Another gang member told him about the gang's colors and beads, and that the "jump-in" would be held at the park. The appellant told the complainant that during the "jump-in," he would be allowed to shield his face from the blows with his hands. The complainant agreed to participate in this initiation ritual because he wanted to become a member of the "Lost Boys."

On the afternoon of October 31, 2008, while at a nearby park, four members of the "Lost Boys" surrounded the complainant and repeatedly struck him with closed fists and, at points when he fell, they kicked his head and ribs. While the appellant recorded the initiation with a video camera, he counted out loud, "one Lost Boy, two Lost Boys," until he counted to 20, at which point he directed the other members to stop. During the initiation, the complainant was beaten four separate times, the last time for entry into another gang. At no time did the complainant attempt to run away, and no one held him down. As a result of this "jumping in," the complainant testified that his ribs were red and hurt "a little" for the next two or three days. Following the initiation, he became a member of the "Lost Boys," and he attended one of its meetings. Subsequently, an assistant principal at the appellant's school discovered the video recording of the initiation when she confiscated a camera from another student. Based on having had many conversations with the appellant, the assistant principal testified that she was familiar with the appellant's voice. After the video was admitted into evidence and played in open court, she identified the appellant's voice as that of the person who counted and directed the other gang members when to start and stop.

Relying on the testimony of the two witnesses presented at the hearing, the Family Court concluded that the appellant committed acts which, if committed by an adult, would have constituted the crimes of conspiracy in the sixth degree and attempted hazing in the first degree.

## "Any Organization"

The appellant contends that there was no evidence to establish that the "Lost Boys" was an organization within the meaning of the hazing statute. In fact, he argues that there was no evidence as to the "Lost Boys'" purpose, where it met, or any other evidence that would have established it was an organiza-

tion. Moreover, the appellant argues, as there is no statutory definition of organization, the Legislature did not intend for a high school gang to be considered an organization.

The presentment agency counters that, giving "organization" its common meaning, the "Lost Boys" constitutes an organization. The "Lost Boys" required an initiation ceremony for admission, members wore specific gang paraphernalia, and they received the benefit of protection from other members. Even if the hazing statute was intended primarily to be used against fraternities, the Legislature's use of "any organization" demonstrated that it intended for the term "organization" to be given a broad meaning.

 The Court begins, as we must, with an analysis of the pertinent statutory language to determine whether the "Lost Boys" is an "organization" within the meaning of Penal Law §§ 120.16 and 120.17. Since the term "organization" is not defined in the Penal Law, it retains its commonsense meaning (*see People v Ward*, 282 AD2d 819, 821 [2001]). "Any organization" is thus defined as "[a] body of persons . . . formed for a common purpose" (Black's Law Dictionary 1133 [8th ed 2004]). Furthermore, the hazing statute's legislative history supports the interpretation that "organization" should be given a broad and inclusive meaning. Notably, at the time in 1983, the former hazing statute, Penal Law § 240.25 (4), only applied "to students in schools, colleges or other institutions" (Mem of Assemblyman Harenberg, 1983 NY Legis Ann, at 312; Sponsor's Mem [Skelos], Bill Jacket, L 1988, ch 86, at 10). The 1983 bill was specifically drafted to expand the scope, under former Penal Law § 240.25 (4), to include nonstudents who abused others in the course of hazing activities (*see* Mem of Assemblyman Harenberg, 1983 NY Legis Ann, at 311; Sponsor's Mem [Skelos], Bill Jacket, L 1988, ch 86, at 10). The stated purpose of the amended provisions, in 1983 and later in 1988, was to apply the law to all persons engaging in hazing activities, not merely students (*see* Mem of Assemblyman Harenberg, 1983 NY Legis Ann, at 311; Sponsor's Mem [Skelos], Bill Jacket, L 1988, ch 86, at 10; *see also* Lewis, *The Criminalization of Fraternity, Non-Fraternity and Non-Collegiate Hazing*, 61 Miss LJ 111, 147-153 [1991] [proposing federal legislation modeled after New York's "any organization" language so that all those who engage in hazing, whether for initiation into a fraternity, business, or scout troop, would be subject to criminal penalties]). According to the complainant, the "Lost Boys" gang was organized by its

members for mutual protection. Members met in the park to carry out the appellant's planned initiation ceremony, held meetings, and wore flags with black and white stars, as well as stringed black and white beads, to signify their membership in the "Lost Boys." Thus, we find that the "Lost Boys" gang is the type of "organization" the Legislature contemplated when it enacted Penal Law §§ 120.16 and 120.17.

### Consent

The appellant argues that the complainant willingly subjected himself to being hit by the other participants because he wanted to be a member of the "Lost Boys." On appeal, the presentment agency does not specifically respond to this argument; however, before the Family Court, the presentment agency argued that the initiation ritual went beyond any consent given by the complainant.

As already noted, both in 1983 and 1988, the originally proposed provisions stated that "the victim's consent shall not be a defense to a prosecution," but, those provisions were not adopted (Sponsor's Mem [Skelos], Bill Jacket, L 1988, ch 86, at 10; Mem of Assemblyman Harenberg, 1983 NY Legis Ann, at 312). However, Penal Law § 120.16, unlike other criminal statutes, does not expressly require that a lack of consent be proven as an element of the crime; nor does it provide that consent is an available defense (*see* Penal Law § 120.05 [5] ["A person is guilty of assault in the second degree when . . . (f)or a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to him, *without his consent,* a drug, substance or preparation capable of producing the same" (emphasis added)]; Penal Law § 130.25 [1] ["A person is guilty of rape in the third degree when . . . (h)e or she engages in sexual intercourse with another person who is *incapable of consent* by reason of some factor other than being less than seventeen years old" (emphasis added)]; *cf.* Penal Law § 120.05 [2] ["A person is guilty of assault in the second degree when . . . (w)ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument"]; *People v Jovanovic,* 263 AD2d 182, 197 n 5 [1999] [noting no available defense of consent for certain types of second-degree assault]; *Helton v State,* 624 NE2d 499, 506 [Ind 1993], *cert denied* 520 US 1119 [1997] [noting that

lack of consent is not a statutory element of battery in Indiana]). Thus, the fact that the Legislature proposed, but ultimately failed to pass, legislation that would have deemed a victim's consent to be unavailable as a defense is not dispositive, because the amendment to CPL 60.22 was unnecessary. "Moreover, consent is not a valid defense if the activity consented to is against public policy. Thus, a child cannot consent to hazing, a gang member cannot consent to an initiation beating, and an individual cannot consent to being shot with a pistol" (*State v Hiott*, 97 Wash App 825, 828, 987 P2d 135, 136-137 [1999] [citations omitted]; *see People v Jovanovic*, 263 AD2d at 197 n 5 ["as a matter of public policy, a person cannot avoid criminal responsibility for an assault that causes injury or carries a risk of serious harm, even if the victim asked for or consented to the act"]; *State v Brown*, 143 NJ Super 571, 580, 364 A2d 27, 32 [1976] [concluding that "the State has an interest in protecting those persons who invite, consent to and permit others to assault and batter them. Not to enforce these laws which are geared to protect such people would seriously threaten the dignity, peace, health and security of our society"], *affd* 154 NJ Super 511, 381 A2d 1231 [1977]; *People v Lenti*, 46 Misc 2d at 685 ["Consent of the pledges certainly should not be a bar to prosecution; intelligent consent cannot be a defense when the public conscience and morals are shocked"]; Pelletier, Note, *Regulation of Rites: The Effect and Enforcement of Current Anti-Hazing Statutes*, 28 New Eng J on Crim & Civ Confinement 377, 386 [2002] [noting that some courts have distinguished the application of consent as a defense in criminal and civil law]). Often, those who are victims of hazing are, to some degree, willing to accept humiliation and physical abuse from others in order to gain social acceptance (*see McKenzie v State*, 131 Md App 124, 148 n 12, 748 A2d 67, 80 n 12 [2000] [noting that "(s)tudents willingly subject themselves to these acts to be accepted. Many times they have no idea of how bad the hazing will be until they are put in the situation. By then, it is too late and they accept the consequences rather than 'lose face' by backing out"]; *Oja v Grand Ch. of Theta Chi Fraternity*, 174 Misc 2d 966, 968 [1997] [noting that the Legislature recognized that hazing assumes a degree of willingness by youths to be bullied and humiliated in exchange for social acceptance]; Lewis, *The Criminalization of Fraternity, Non-Fraternity and Non-Collegiate Hazing*, 61 Miss LJ at 138 [1991]). In order to give effect to Penal Law §§ 120.16 and

120.17, and under the circumstances of this case, consent is not a valid defense.

## Community of Purpose

The appellant contends that because he merely counted and taped the initiation and did not strike the complainant, he did not share a "community of purpose" with those who actually struck the complainant (*People v Allah*, 71 NY2d 830, 832 [1988]).

The presentment agency counters that the appellant, in addition to taping the incident and counting, orchestrated the initiation and, therefore, was subject to liability as an accomplice.

■ Contrary to the appellant's contention, his acts of recruiting the complainant, and directing the duration and timing of the attack on the complainant by counting aloud and videotaping the incident, demonstrated that he shared a "community of purpose" with those who actually struck the complainant (*id*. at 832; *see* Penal Law § 20.00). The appellant was not a bystander merely present while others struck the complainant.

Accordingly, viewing the evidence in the light most favorable to the presentment agency (*see Matter of David H.*, 69 NY2d 792, 793 [1987]), we find that it was legally sufficient to establish, beyond a reasonable doubt, that the appellant committed acts which, if committed by an adult, would have constituted the crimes of conspiracy in the sixth degree and attempted hazing in the first degree. Moreover, upon reviewing the record here, we are satisfied that the Family Court's determination was not against the weight of the evidence (*see* Family Ct Act § 342.2 [2]; *cf. People v Romero*, 7 NY3d 633 [2006]).

## Accomplice

The appellant contends that the complainant was an accomplice as a matter of law, as he willingly and eagerly participated in the initiation ritual. Therefore, his testimony required corroboration, and the presentment agency failed to adduce sufficient corroborative evidence.

The presentment agency responds that corroboration of the complainant's testimony was not required because he was the person being hazed. In any event, it presented legally and factually sufficient corroborative evidence through the testimony of the assistant principal.

■ Pursuant to CPL 60.22 (2) (a) and (b), an accomplice is "a witness in a criminal action who, according to evidence adduced

in such action, may reasonably be considered to have participated in . . . [t]he offense charged; or . . . [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged." Contrary to the appellant's contention, the complainant was not an accomplice as a matter of law (*see e.g. People v Montague*, 245 AD2d 391 [1997]). The record is devoid of any evidence that the complainant intentionally or recklessly engaged in conduct which created a substantial risk of physical injury to *another* person. To the contrary, the harmful conduct was directed at the complainant. The complainant was not a participant, but a victim who cannot be an accomplice to his own victimization. Indeed, the hazing statute was enacted to protect victims just like the complainant (*see People v Wing*, 77 NY2d 851, 852 [1991]). In other words, the complainant could not have been potentially subject to criminal liability for allowing gang members to strike him (*see People v Fielding*, 39 NY2d 607, 611 [1976]).

### Order of Disposition

Since the appellant consented to the order of disposition placing him with the Office of Children and Family Services for a period of 12 months, he is not aggrieved by that portion of it (*see Matter of Shaheen P.J.*, 29 AD3d 996, 997 [2006]; *Matter of Stevenson J.*, 306 AD2d 412, 413 [2003]). In any event, the period of probation has expired.

### Conclusion

In conclusion, the evidence presented at the fact-finding hearing supports the Family Court's determination that the appellant engaged in criminal conduct. However, we recognize that not all initiation and admission ceremonies are criminal. In fact, the Legislature did not criminalize all initiation rituals, only those acts that create a substantial risk of physical injury to another person. Under certain circumstances, some initiation rituals may even perform a social utility by promoting bonding and solidarity among members of a group (*see* Lewis, *The Criminalization of Fraternity, Non-Fraternity and Non-Collegiate Hazing*, 61 Miss LJ at 147-148 [1991]; Junger, *First, The Ordeal*, New York Times, Mar. 11, 2000, at A15; *see also McKenzie v State*, 131 Md App at 147, 748 A2d at 79 ["Group initiations . . . should not entail violence or endanger would-be members"]). Nevertheless, group initiation ceremonies that entail violence or endanger would-be members have no place in a

maturing society, but should be relegated to the archaic civilizations from where they came (*see McKenzie v State*, 131 Md App at 149-150, 748 A2d at 80-81; *People v Lenti*, 46 Misc 2d at 686; Kuzmich, Comment, *In Vino Mortuus: Fraternal Hazing and Alcohol-Related Deaths*, 31 McGeorge L Rev at 1125 [2000]).

Therefore, the appeal from so much of the order of disposition as placed the appellant in the custody of the New York State Office of Children and Family Services for a period of 12 months with credit for time spent in detention pending disposition is dismissed, and the order of disposition is affirmed insofar as reviewed.

FISHER, J.P., SANTUCCI and ENG, JJ., concur.

Ordered that the appeal from so much of the order of disposition as placed the appellant in the custody of the New York State Office of Children and Family Services for a period of 12 months with credit for time spent in detention pending disposition is dismissed, without costs or disbursements; and it is further,

Ordered that the order of disposition is affirmed insofar as reviewed, without costs or disbursements.