*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ETHAN TIN CAO,

        Defendant-Appellant.

FOR PUBLICATION
October 06, 2025
1:15 PM

No. 373185
Ingham Circuit Court
LC No. 22-000721-FH

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

ACKERMAN, J.

This is the first case in which our Court has addressed Garret's Law, MCL 750.411t, which criminalizes hazing in Michigan.[1] Defendant Ethan Cao, the "pledge master" of a Michigan State University fraternity, is charged under that law in connection with the death of one pledge and injuries to three others at a fraternity party. In this interlocutory appeal by leave granted, he challenges the district court's decision to bind the case over for trial and raises several constitutional challenges to Garret's Law. We conclude that the district court had probable cause to bind this matter over and that the statute is constitutional, so we affirm.

## I. FACTS

According to testimony at the preliminary examination, the Pi Alpha Phi fraternity at Michigan State hosted a party that began late in the evening of November 19, 2021, and extended into the early morning hours of November 20. The party was described as a "crossover" party intended to celebrate the transition of new pledges to full fraternity membership. The pledge class

---

[1] The law was inspired by Garret Drogosch, a 7th-grade football player who broke his leg during a "ritual hitting drill" at practice on "8th grade hit day." See Zehr, *Michigan Lawmakers Tackle Hazing*, Education Week (March 24, 2004), p 19. At age 12, he testified in support of the legislation before the Legislature, and the statute was ultimately named in his honor. See *id*.; MCL 750.411t(8).

consisted of Phat Nguyen, Hyung-Woo Jeon, Joshua Tran, and Julian Garcia. When asked whether "[t]he point of a crossover party is to get you unconscious," Jeon testified, "the point was just to get like really drunk." When asked if "the point is to get you really, really drunk and to the point where you ultimately will end up in the basement to be written on and things of that nature," he responded, "I suppose, maybe."[2] In a video taken during the party and played at the preliminary examination, a female voice[3] is heard saying to Jeon, "you're going to die tonight." Jeon did not interpret the statement as a threat but rather as a joking reference to the amount of alcohol he was expected to consume.

Jeon testified that when they arrived at the party, defendant was not yet there. Jeon, Tran, and Garcia all described defendant as the "pledge master" of the fraternity—a role that, according to Garcia, made him "the authoritative figure of the entire process." The group went to the basement of the fraternity to wait for defendant; Jeon agreed when asked whether they did so because they "didn't want to get too drunk or didn't want to get too wasted before [defendant] came to the party." Forensic analysis of cell phones later obtained from partygoers revealed text messages to and from defendant. One message asked, "Did you grab the 40's," to which defendant responded, "No not yet" and "I can though." In another message, defendant said, "wait until I get there before they're dead lmao," and when asked, "Did you even get the alc," he replied, "Getting it."[4]

When defendant arrived, Nguyen, Jeon, Tran, and Garcia returned upstairs to the kitchen and were presented with 20 shots of alcohol (five apiece), which they immediately consumed; Jeon, Tran, and Garcia all testified that their memories of the evening ended after this. Testimony at the preliminary examination also established that fraternity members with greater seniority encouraged the pledges to drink through a practice referred to as "scrolling" over the course of the night. Tran testified that there was "peer pressure" to comply. While he agreed that he technically could have declined to drink, he also agreed when asked "if you didn't drink that night, do you think that your fraternity brothers would have been upset." Garcia similarly testified that although drinking was not explicitly required, "[i]t is expected." Videos and photographs later recovered from cell phones showed that they eventually returned to the basement, where fraternity members drew on their shirtless torsos while they appeared to be unconscious.

---

[2] The prosecuting attorney conducting the direct examination was permitted to ask Jeon leading questions under MRE 611(d)(1)(B) in light of Jeon's friendship with defendant. The district court later found that "[w]hen Mr. Jeon was on the stand, it was apparent to the Court that he did not want to be there and did not want his testimony to harm his friend," resulting in a finding "that Mr. Jeon's relationship with Mr. Cao negatively impacted his credibility"—an assessment the court extended to Tran and Garcia as well.

[3] Jeon and Garcia testified that members of two sororities, Alpha Phi Gamma and alpha Kappa Delta Phi, were present at the party.

[4] The district court ultimately concluded that the text messages could not establish whether defendant actually did obtain alcohol for the party given uncertainties regarding the timestamps and how they aligned with the overall timeline for the party.

Later that night, East Lansing police were dispatched to the fraternity in response to a report of an individual who was unconscious and not breathing. When they arrived, they found Jeon, Tran, and Garcia unconscious but alive. Nguyen, however, was pronounced dead at the scene, and a subsequent investigation attributed his death to acute ethanol toxicity; a subsequent postmortem examination concluded that his blood alcohol concentration was .386. The other three were hospitalized and later discharged, although Jeon's .427 blood-alcohol concentration left him in the intensive care unit for two days.

These charges followed. After a two-day preliminary examination, the prosecution moved to bind the case over to circuit court for trial. Defendant opposed that motion and separately moved to hold Garret's Law unconstitutional, both facially and as applied. The district court denied defendant's motion and granted the prosecution's. Defendant renewed both arguments in the circuit court, which likewise denied the motions. This Court then granted defendant's application for interlocutory appeal.

## II. BIND OVER

Defendant first challenges whether the district court had sufficient evidence to bind the matter over to circuit court for trial. "If the magistrate determines at the conclusion of the preliminary examination that a felony has been committed[5] and that there is probable cause for charging the defendant with committing a felony, the magistrate shall forthwith bind the defendant to appear within 14 days for arraignment before the circuit court of that county . . . ." MCL 766.13. That evaluation expressly includes consideration of a witness's credibility. *People v Anderson*, 501 Mich 175, 178; 912 NW2d 503 (2018). Probable cause means evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" that the offense occurred and that the accused committed it. *People v Justice (After Remand)*, 454 Mich 334, 344; 562 NW2d 652 (1997) (cleaned up). We review a bind-over decision for an abuse of discretion, which "occurs when the trial court's decision falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (quotation marks and citation omitted). Our review of the district court's probable cause determination requires us to construe the statute to determine the elements of the charged offense; we review the district court's interpretation of the statute de novo. *People v Kloosterman*, 296 Mich App 636, 639; 823 NW2d 134 (2012).

Defendant is charged with violating Garret's Law, which provides that "a person who attends . . . an educational institution shall not engage in or participate in the hazing of an individual." MCL 750.411t(1). "Hazing" is defined as:

> an intentional, knowing, or reckless act by a person . . . that is directed against an
> individual and that the person knew or should have known endangers the physical

---

[5] Although the statute does not specify the standard of proof required to demonstrate that a felony was committed, MCR 6.110(E) makes clear that the probable cause standard applies both to that question and to whether the defendant committed the alleged offense. See *People v Fiedler*, 194 Mich App 682, 689-692; 487 NW2d 831 (1992).

health or safety of the individual, and that is done for the purpose of pledging, being initiated into, affiliating with, participating in, holding office in, or maintaining membership in any organization.  [MCL 750.411t(7)(b).]

The statute expressly includes "[a]ctivity involving consumption of a food, liquid, alcoholic beverage, liquor, drug, or other substance that subjects the individual to an unreasonable risk of harm or that adversely affects the physical health or safety of the individual" as a form of hazing. MCL 750.411t(7)(b)(*iii*).   Consent is not a defense.   MCL 750.411t(6).   Although MCL 750.411t(1) ostensibly prohibits hazing regardless of outcome, MCL 750.411t(2) makes criminal liability contingent on a resulting harm expressly enumerated in the statute, thereby making such harm an element of the offense.  A violation that "results in physical injury" is punishable by not more than 93 days' imprisonment and a fine of not more than $1,000 (or both), but "[i]f the violation results in death, the person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both."  MCL 750.411t(2)(a), (c).

Defendant asserts that the prosecution failed to establish probable cause as to several elements of the offense.  First, he claims that the statute applies only to "a person who attends . . . an educational institution" and that the prosecution failed to show he was a student at Michigan State at the time of the events.  The district court acknowledged that "the testimony regarding whether [defendant] was a current student attending MSU on November 19, 2021, was equivocal." Jeon testified that he was not sure whether defendant had graduated, explaining that "he was a grade above me" and that "certain members who had graduated had stuck around for a bit during the time that they were looking for jobs."  At the same time, Jeon also agreed when asked whether "in order to get in, be a member of Pi Alpha Phi you had to be a student at Michigan State University, correct?"  The district court found Jeon's credibility impaired due to his friendship with defendant and did not fully accept the uncertainty Jeon expressed about defendant's student status.  Additionally, text messages admitted into evidence included one from defendant on the day of the party stating, "I'm in class dude."  Taken together, the fraternity's affiliation with the university and defendant's own remark support a finding that a person of ordinary prudence could reasonably believe defendant was a student on the relevant date.

Defendant next argues that there is insufficient evidence that he "engage[d] in or participate[d] in the hazing of an individual."  He focuses on the statutory requirement that hazing be "directed against an individual," which the district court interpreted as requiring "force, i.e., power, violence, or pressure directed against an individual."  Defendant seizes on the district court's reference to force and maintains that no one was "*forced*" to do anything at the party.[6]  But the term "force" does not appear in the statute, and we do not read it as an essential element. "Direct" merely suggests purposefully aiming conduct toward a person or object ("To cause to move in a certain direction or toward a certain object; turn or point: *directed the light toward the end of the hall*"), while "against" connotes opposition or hostility ("In hostile opposition or

---

[6] Defendant does not dispute that the events at the party otherwise meet the statutory definition of hazing under MCL 750.411t(7)(b)(*iii*).  His argument is that the prosecution cannot demonstrate that he "directed [the party] against" the victims.

resistance to: *struggle against fate*").  *The American Heritage Dictionary of the English Language* (5th ed).  Read together, the phrase in this context refers to conduct purposefully aimed at an individual in a manner that is adverse to that person's well-being.  The statute does not require the conduct to be physically forceful or coercive; indeed, such a requirement would be incompatible with the statute's express provision that a victim's consent is not a defense.

With that understanding, the record supports a finding of probable cause.  The statute expressly provides that "[a]ctivity involving consumption of a . . . liquid, alcoholic beverage, [or] liquor" can qualify as hazing.[7]  Notably, the statute does *not* provide that a specific *instance* of consumption qualifies as hazing; rather, it is *activity involving* the consumption of those substances that qualifies as hazing.  Here, the "activity" that "involved" consumption of those substances was at minimum the "scrolling" directed against the victims by fraternity members.[8]  There is record support that defendant, as the "pledge master," was "the authoritative figure of the entire process" and that other fraternity members looked to him as a key figure in planning the party and establishing its parameters.[9]  Organizing a party at which one knows fraternity pledges will be pressured to drink to excess—which defendant knew, to the extent that he asked that the fraternity "wait until I get there before they're dead"—is "an intentional, knowing, or reckless act . . . directed against" the victims, and there is sufficient record support that defendant "knew or should have known" it would "endanger[] the physical health or safety of" the victims.  There is probable cause to support this element.

Finally, defendant contends that his actions did not "result in" Nguyen's death.  He agrees with the district court's conclusion that "by using the word 'result' instead of 'cause' in the statute, the Legislature specifically directed that only factual causation need be established."  *People v*

---

[7] There is a bit of a grammatical mismatch here, inasmuch as MCL 750.411t(7)(b) describes hazing as "an . . . act," while MCL 750.411t(7)(b)(*ii*)-(*iv*) specifically provide that certain "activity" that may not be easily boiled down to a single "act" qualifies as "hazing."  We defer to the more specific articulation of what constitutes "hazing," because "where a statute contains a general provision and a specific provision, the specific provision controls."  *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994).

[8] The Legislature's use of the phrase "activity involving" may contemplate a broader course of conduct—such as the party overall—that qualifies as "hazing," but because the record establishes the practice of "scrolling," we need not address whether other forms of pressure or expectation to drink to excess that are not as clearly and specifically imposed as "scrolling" might also qualify as "hazing."  Nor do we need to decide whether individuals who were not fraternity members but participated in "scrolling" could be found criminally liable.

[9] Because the record establishes probable cause to conclude that defendant held a leadership role, we need not resolve whether non-leaders who are present for an act of hazing are subject to criminal liability.  While the statute specifically provides that it is a crime to "participate in the hazing of an individual," future cases can decide exactly how involved one need be to have "participate[d]" in hazing someone.  See also Penrod, *Proceed with Caution: Criminal Responsibility for Non-Participating Actors in University Hazing Incidents*, 38 Touro L Rev 1235, 1254 (2023).

*Wood*, 276 Mich App 669, 672; 741 NW2d 574 (2007). But he disputes the district court's finding that probable cause supports that element. In his view, the statute requires that Nguyen's death be traceable to defendant's own acts, and the only evidence tying him to the outcome, he argues, is that he was merely cheering others on. This misconstrues the statute. "Hazing" is "[a]ctivity involving" the consumption of, among other things, excess alcohol, not the specific individual consumption of each alcoholic drink. It is the collective pressure to drink to excess—*manifested* as a series of "scrolling" requests—that is "hazing." Whether defendant personally directed each instance of "scrolling" or not, his leadership role supports a finding that he was responsible for the collective pressure imposed on the victims. Because that pressure "result[ed] in" the injuries suffered, that element too is supported by probable cause.

In sum, the district court did not abuse its discretion in binding the matter over for trial. There was sufficient evidence to support each challenged element of the charged offense.

## III.  CONSTITUTIONAL CHALLENGES

Defendant also raises a hodgepodge of constitutional challenges to Garret's Law—both on its face and as applied to him. Either way, "the constitutionality of a statute is a question of law that we review de novo." *People v Jensen (On Remand)*, 231 Mich App 439, 444; 586 NW2d 748 (1998). "[A] statute comes clothed in a presumption of constitutionality and that the Legislature does not intentionally pass an unconstitutional act." *Cruz v Chevrolet Grey Iron Div*, 398 Mich 117, 127; 247 NW2d 764 (1976). It is therefore defendant's burden to prove that this law is unconstitutional. *People v Trinity*, 189 Mich App 19, 21; 471 NW2d 626 (1991).

## A.  FREEDOM OF ASSOCIATION

Defendant first argues that Garret's Law infringes on the First Amendment right to freedom of association. He correctly notes that the First Amendment protects "certain forms of orderly group activity." *NAACP v Button*, 371 US 415, 430; 83 S Ct 328; 9 L Ed 2d 405 (1963). He contends that the statute "targets and broadly criminalizes otherwise lawful conduct of student organizations so much that it impinges on the First Amendment" and analogizes to religious student organizations—for example, a Roman Catholic student organization that requires "fasting in its strictest form during Lent of its members."

But that argument mischaracterizes the statute. Garret's Law does not criminalize lawful expressive conduct by student groups. Rather, it narrowly defines "hazing" to include an "intentional, knowing, or reckless act . . . that the person knew or should have known endangers the physical health or safety of the individual." The state's interest in preventing such harm is well-established: A state has "an unqualified interest in the preservation of human life." *Cruzan v Director, Mo Dep't of Health*, 497 US 261, 282; 110 S Ct 2841; 111 L Ed 2d 224 (1990). While the First Amendment protects "certain forms of orderly group activity," we emphasize that the protection is for *orderly* activity. It does not extend to conduct that deliberately or recklessly endangers the physical health or safety of current or prospective members. No court "has recognized a constitutional right in members of an organization to recklessly endanger the mental or physical health or safety of members or potential members of that organization . . . ." *State v Allen*, 905 SW2d 874, 878 (Mo, 1995). See also *McKenzie v State*, 131 Md App 124, 146-150; 748 A2d 67 (2000) (rejecting a similar freedom of association challenge to an anti-hazing law).

## B. EQUAL PROTECTION

Defendant next contends that Garret's Law violates the Equal Protection Clause[10] by drawing improper distinctions between student organizations. Specifically, MCL 750.411t(5) provides that the law "does not apply to an activity that is normal and customary in an athletic, physical education, military training, or similar program sanctioned by the educational institution." Defendant takes issue with that provision, asserting that it "bifurcates student organizations and treats them differently."

It is true that "the Equal Protection Clause . . . directs that all persons similarly circumstanced shall be treated alike." *El Souri v Dep't of Social Servs*, 429 Mich 203, 207; 414 NW2d 679 (1987). But "[u]nless the discrimination involves a suspect class or impinges on the exercise of a fundamental right, the applicable equal protection test is whether the classification is rationally related to a legitimate governmental purpose." *People v Martinez*, 211 Mich App 147, 150; 535 NW2d 236 (1995). Defendant concedes that rational basis review applies.

That standard is easily met. "[W]here the legislative judgment is supported by any state of facts either known or which could reasonably be assumed . . . the legislative judgment must be accepted." *Shavers v Attorney Gen*, 402 Mich 554, 614; 267 NW2d 72 (1978) (quotation marks and citation omitted). Athletics, physical education, and military training programs inherently involve physicality that might otherwise seem hazardous, yet they serve legitimate purposes and are subject to institutional oversight. Cf. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 89; 597 NW2d 517 (1999) (adopting a "reckless misconduct" standard for recreational torts rather than a standard of ordinary care). Moreover, those programs are not given carte blanche to haze; the statutory exception applies only to *normal and customary* activities within those settings. The classification is therefore rational and does not violate equal protection.

## C. VAGUENESS AND OVERBREADTH

Defendant further challenges Garret's Law as unconstitutionally vague and overbroad. In particular, he maintains that the statute fails to provide fair notice of what qualifies as a "reckless act" or what conduct may "endanger the physical health or safety" of an individual. He also claims that the statutory text "is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated."

Defendant correctly cites *People v Rogers*, 249 Mich App 77, 95; 641 NW2d 595 (2001), for the principle that statutes must provide "fair notice of the proscribed conduct" and adequate guidance to "the trier of fact to determine whether the law has been violated." But he cites no authority suggesting that this statute crosses any constitutional line, and we see no basis for concluding that it does.

First, "a statute need not define an offense with mathematical certainty." *People v Lawhorn*, 320 Mich App 194, 200; 907 NW2d 832 (2017) (cleaned up). That observation is

---

[10] US Const, Am XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.").

particularly apt here, given that hazing is something of a moving target. As one court put it: "It would have been an impossible task if the legislature had attempted to define hazing specifically. Fraternal organizations and associations have never suffered for ideas in contriving new forms of hazing." *People v Lenti*, 44 Misc 2d 118, 121-122; 253 NYS2d 9 (Nassau Co Ct, 1964). Because "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language," *United States v Nat'l Dairy Prods Corp*, 372 US 29, 32; 83 S Ct 594; 9 L Ed 2d 561 (1963), courts do not allow parties to manufacture uncertainty to invalidate a law.

> It is, of course, virtually impossible for the legislature to employ the English language with sufficient precision to satisfy a mind intent on conjuring up hypothetical circumstances in which commonly understood words seem momentarily ambiguous. The constitution, however, does not demand that the [Legislature] use words that lie beyond the possibility of manipulation. Instead, the constitutional due process demand is met if the words used bear a meaning commonly understood by persons of ordinary intelligence. [*Allen*, 905 SW2d at 877.]

Second, and even more importantly, many criminal laws—such as those prohibiting reckless driving causing death, MCL 257.626, or reckless discharge of a firearm at a dwelling, MCL 750.234b(2)—already require factfinders to evaluate whether a defendant acted recklessly or endangered another's safety. Terms like "reckless" or "endanger" are not impermissibly vague simply because they require fact-specific judgments. Unsurprisingly, courts across the country have consistently upheld similar anti-hazing statutes against vagueness and overbreadth challenges.[11] We conclude that a person of ordinary intelligence could understand what the statute prohibits.

Defendant's only novel argument is that Garret's Law is unconstitutional because it precludes consent as a defense, allegedly leaving individuals unable to know whether their conduct is criminal when the victim consents. But that argument is foreclosed by well-established principles:

> Generally, it may be said that consent by the victim is not a defense in a criminal prosecution . . . . Thus, it is no defense to a charge of murder that the victim, upon learning of the defendant's homicidal intentions, furnished the defendant with the gun and ammunition. *Nor is it a defense to the statutory offense of fraternity "hazing" that the pledges consented to the activity.* [LaFave, Substantive Criminal Law, § 6.5(a), pp 683-684 (emphasis added).]

See also *McKenzie*, 131 Md App at 147-149. A statute is not vague simply because it criminally prohibits conduct to which a victim consents. Cf. *People v Lenti*, 46 Misc 2d 682, 685;

---

[11] See *Martin v State*, 259 So 3d 733, 739-742 (Fla, 2018); *Carpetta v Pi Kappa Alpha Fraternity*, 100 Ohio Misc 2d 42, 51-53, 56-57; 718 NE2d 1007 (CP Lucas Co, 1998); *Allen*, 905 SW2d at 876-878; *People v Anderson*, 148 Ill 2d 15, 22-30; 591 NE2d 461; 169 Ill Dec 288 (1992).

260 NYS2d 284 (Nassau Co Ct, 1965) ("Consent of the pledges certainly should not be a bar to prosecution; intelligent consent cannot be a defense when the public conscience and morals are shocked . . . .").

## D. AS-APPLIED

Defendant also raises an as-applied challenge, asserting that Garret's Law is unconstitutional as applied to him. He claims that the prosecution merely alleged that he was "cheering" at the party and that punishing him under the statute impermissibly targets expressive conduct. But the record shows that defendant's role went far beyond cheering. Multiple witnesses described him as the "pledge master," the person in charge of the initiation process. They testified that he helped plan the party and dictated when the most intensive alcohol consumption would begin. Text messages introduced at the preliminary examination showed that he coordinated logistics and expressed concern that the pledges not be too intoxicated before he arrived. It was only upon his arrival that the pledges returned to the kitchen and each consumed five shots of alcohol, accompanied by an evening of "scrolling." Other evidence suggested that he may have physically taped alcohol bottles to pledges' hands. This is not a case of punishing protected speech. The statute is being applied to conduct that involved organizing and facilitating a dangerous drinking ritual that led to one death and multiple hospitalizations. That application falls well within constitutional bounds.

## E. *PEOPLE V OTTO*

Finally, defendant invokes this Court's decision in *People v Otto*, 348 Mich App 221; 18 NW3d 336 (2023), to argue that applying Garret's Law here would stretch the statute beyond its intended reach. In *Otto*, the brakes on the defendant's dump truck failed and led to a fatal accident. The defendant was convicted of reckless driving causing death under MCL 257.626(4) based on the theory that he was reckless for driving an inadequately maintained vehicle. This Court reversed, holding that the statute had been stretched too far:

> The prosecution's reading of the statute would encompass commonplace conduct that MCL 257.626 was never intended to criminalize, like driving on old tires (ignoring the risk of a blowout), driving with the gas light on (ignoring the risk of a sudden stop on the highway), or any other neglected maintenance that may lead to a sudden malfunction. [*Id*. at 253.]

That concern is not present here. The conduct charged is precisely the type of behavior Garret's Law was intended to address: orchestrating a drinking ritual that subjected fraternity pledges to dangerous amounts of alcohol. That the statute identifies "[a]ctivity involving consumption of a . . . liquid, alcoholic beverage, [or] liquor" as a form of hazing, MCL 750.411t(7)(b)(*iii*), underscores that its application here is neither novel nor unexpected.[12]

---

[12] See also Senate Legislative Analysis, SB 783 (August 17, 2004) (specifically listing concerns with fraternity pledging as impetus for the legislation).

## IV.  CONCLUSION

It has been two decades since the Legislature enacted Garret's Law through 2004 PA 111, but it has not received appellate scrutiny until now.  We join the consensus of other states in upholding the constitutionality of anti-hazing legislation, both facially and as-applied, against challenges based on freedom of association, equal protection, vagueness, and overbreadth.  We further conclude that the district court did not abuse its discretion in binding the matter over for trial, as the preliminary examination record supports probable cause for each challenged element of the charged offense.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani